## RINGGOLD VS. PATTERSON.

In a chancery cause, if the existence of a fact upon which the decision must turn, is doubtful, the chancellor should, of his own motion, and it is his duty, if insisted on by either party, to cause the fact to be ascertained by a jury.

The finding or determination of the chancellor concerning a material issue of fact, where the issue has not been sent to a jury, and there is a conflict of evidence, is not conclusive on appeal, like the verdict of a jury, or the finding of a common law court, sitting as one.

The omission of the advertisement of an execution sale, or the failure of the sheriff to make a literal compliance with that provision of law, would not vitiate a sale to an innocent purchaser, and if the sale take place without notice or advertisement by the consent and agreement of the execution debtor, it is valid as to him.

An execution sale, privately held by agreement of the debtor, at a time or place not appointed by law, may not be void; but, even where fraud is not alleged, the purchaser being ignorant of the want of notice, it would be reasonable to hold that it is voidable at the election of any junior incumbrancer or creditor, who had no notice.

The knowledge by the purchaser at executive sale, that it is made without advertisement and by private agreement, though it might not be conclusive evidence of fraud, is always a circumstance, and in connection with other attendant circumstances—such as apparent concert between the purchaser and execution debtor; material misrepresentations as to the property by the latter in the presence of the former, who is presumed to know the truth, calculated to deceive the plaintiff; the aceptance of a conveyance of the same lands from the debtor on further advances made,—may be a forcible one, from which collusion between the purchaser and the execution debtor is to be inferred.

27BB

*Appeal from Independence Circuit Court in Chancery.*

Hon. B. H. NEELY, Circuit Judge.

FOWLER, for the appellant, contended that the sale of land by an officer, under execution, is valid, and passes the title, although he fails to give notice of the time and place of sale, as required by law, and although the purchaser may have been aware that no notice was given, (*Turner vs. McRea,* 1 *Nott & McCord Rep.* 12; *Lawrence vs. Speed,* 2 *Bibb Rep.* 401; *Hayden vs. Dunlap,* 3 *Ib.* 216; *Webber & Co. vs. Cox,* 6 *Monroe Rep.* 111; *Shamburger vs. Kennedy,* 1 *N. C. Rep.* 1; *Reynolds vs. Rye,* 1 *Freem. Ch. Rep.* 470; 10 *Smedes & Marsh. Rep.* 258; *Pepper vs. Thornton,* 6 *Mon. Rep.* 33; *Byers et al. vs. Fowler et al.,* 12 *Ark Rep.* 272;) that although no notice of sale in this case was given, it is immaterial, as the execution debtor waived it. (1 *N. C. Rep.* 1; 3 *Wash. Cir. C. Rep.* 553.) That the belief, impressions, recollections of a witness are entitled to no weight as evidence without the facts on which they are based. (*Carrico vs. Neal et al.,* 1 *Dana Rep.* 537; *Span & Green vs. Welman,* 11 *Mo. Rep.* 234; *Clason vs. Morris,* 10 *Johns. Rep.* 531; *Van Dyne vs. Tharpe,* 19 *Wend. Rep.* 165; 2 *J. J. Marsh.* 426; *Langford vs. Cummings,* 4 *Ala. Rep.* 48.) That the execution debtor's conduct and statements, whether he be viewed as the former owner of the land, or as an accomplice in the alleged fraud, are wholly inadmissible as evidence against the purchaser, who holds the lands in opposition to him, and there being not a particle of proof *aliunde* of any confederacy or collusion. (*Greenl. Ev.* [*Ed. of* 1842,] *secs.* 112, 177, 233; 1 *Bar. Ch. Rep.* 115; *Gullet vs. Lamburton,* 6 *Ark. Rep.* 122; *Turpin vs. Marks,* 3 *J. J. Marsh. Rep.* 627; 4 *Bibb Rep.* 270; 3 *Litt. Rep.* 14; 4 *Dana Rep.* 223.) And argued this cause at length as to the effect of the answer denying the statements of fraud alleged in the bill; and upon the question of fraud or collusion, on the part of the appellant.

PIKE & CUMMINS, and WM. BYERS, for the appellee. Where a combination or common intent is shown, the declarations of a *particeps criminis* are evidence against the others. *Phill. on Ev.*, by *Cowen & Hill, part* 1, *notes, p.* 177, 178; 6 *J. R.* 155; 11 *Mass. Rep.* 498; 3 *Ib.* 559; *Croft vs. Arther*, 3 *Desr. Rep.* 223; 6 *Har. & John.* 435; *Glenn vs. Keff*, 2 *Gill & John.* 132; *Moore vs. Tracy*, 7 *Wend.;* 8 *Smedes & Marsh.* 305.

Where the act has a tendency or operation to hinder and delay creditors, it is void. *Story's Eq.*, *secs.* 349, 350, 351; *Merrit vs. Perry*, 13 *John. R.* 471; 18 *J. R.* 425; 20 *J. R.* 5; 7 *Paige* 87; 3 *Eng.* 260; 7 *Eng.* 218; 4 *Kent Com.* 464, *note.*

To authorize an appellate court, in chancery, to set aside a finding of the facts, there must be such preponderance of evidence against the finding and decree as would entitle the party to a new trial in a case at law. 11 *Sm. & Marsh.* 458; 1 *Hill Ch. R. (S. Car.)* 58; 16 *Ohio Rep.* 417; 12 *Ib.* 75.

That the answer was not sufficient to entitle it to any weight as evidence; and the facts show collusion with Dickinson, to hinder and delay his creditors.

Mr. Chief Justice WATKINS delivered the opinion of the Court.

The appellee exhibited his bill against Townsend Dickinson, Benjamin Dickinson, Ringgold, the appellant, and Hynson and Worley, tenants of his in possession, and also against William Moore, as administrator of Robert Moore, deceased : the object of which was to quiet the complainant's title to certain tracts of land, sold by the sheriff under execution against the two Dickinsons, and to vacate a marshal's deed to Ringgold for the same lands, alleged to have been purchased through fraudulent combination with Townsend Dickinson, to hinder and defraud his creditors, for an account of rents and profits of the land, while in the possession of Ringgold or his tenants ; and as against the administrator of Robert Moore, for a decree under the statute requiring him to execute a deed to the complainant, in order to invest him

with the legal title to a portion of the land, which his intestate had sold to Benjamin Dickinson, who went into possession, and held under a bond, conditioned to make title, on payment of the purchase money, which the complainant represented had been fully paid.

Upon examination of this voluminous record of pleadings, exhibits and depositions, extending to near four hundred pages, it appears that the material question, upon which the decision must turn, is one of fact; that is, assuming that the acts and intentions of Townsend Dickinson were fraudulent, whether the purchaser, Ringgold, was concerned in, or privy to the same. It would seem that the chancellor, before whom the cause was heard, did not consider this so doubtful as to induce him to make up an issue and direct a jury to be empanneled for the trial of it, though according to our impression it was sufficiently doubtful to have made it desirable of his own motion, and his duty, if insisted on by either party, to cause the fact to be ascertained by a jury. It is now argued, on behalf of the appellee, that the finding or determination by the chancellor, concerning a material issue of fact, which he did not choose, nor either party ask him to submit to a jury, is conclusive like the verdict of a jury, or the finding of a common law court, sitting as one, which ought not to be disturbed where there is a conflict of evidence. The argument could not apply in the present case, because, as we understand the decree of the Court below, it went against the appellant upon the ground of legal or constructive fraud. But it can have no application in any chancery cause, where the issue has not been sent to a jury, beyond that degree of respect which might be due to the opinion of another court or judge. In the *State Bank vs. Conway*, (13 *Ark.* 350,) the distinction between appeals in chancery, and writs of error or appeals in common law cases, was adverted to. The Court there said, "The appeal in chancery is a rehearing, or trial of the cause *de novo*, upon the same pleadings and written evidence heard, and determined by the decree in the Court below, and, to some extent, necessarily involves the determination of facts." A

brief recital in the decree of the facts upon which it is rendered, is. allowable and may often be useful, but is not now considered any more essential to its validity, than a statement of the reasons or legal argument which may have induced the conclusion; else a decree, right upon the whole record, might have to be reversed, because of omission or mistake in the recital of some particular fact.

It appears from the transcript, that, in the months of March and April, 1840, two judgments for near four thousand dollars were rendered against Townsend and Benjamin Dickinson, in the Circuit Court of the United States, upon which executions issued, and being levied upon a number of tracts of land, including those now in controversy, as the property of one or both of the Dickinsons, they were advertised to be sold by the marshal, at the court-house door, in Batesville, on the 15th day of March, 1841. Townsend Dickinson deposited with the plaintiff's attorneys, certain collateral securities, which they supposed to be valid, amounting to seven thousand dollars, and they agreed, in writing, to postpone the sale until the first day of May, following, when it was to take place without further notice, unless the executions should be satisfied by that time. Pursuant to this agreement, the marshal proceeded to expose the lands for sale, on the 1st of May, when a portion of the tracts were bought by the defendant, Ringgold, another portion by William F. Denton, since deceased, and the residue by an agent of the plaintiffs in execution, who attended the sale. Denton, on the day of sale, relinquished his bid to Ringgold, who paid the money and received a certificate of purchase for the tracts bought by himself and Denton, and on the first of June, 1842, obtained a marshal's deed for the same, being the lands now in controversy.

In April, 1840, T. & B. Dickinson were indebted to one James P. Carter, in the sum of $1,351, for which he held their promissory note, payable on the 1st of September, following. In October, 1840, Carter instituted suit upon the note in the Independence Circuit Court, against the two Dickinsons, and, on the 9th of

June, 1841, recovered judgment against them for $1,445. In July, 1842, he caused execution to be issued upon this judgment, which was levied upon the lands in controversy, but they were not sold. In May, 1843, a writ of *venditioni exponas* was issued pursuant to an order of court. Upon this execution, the Dickinsons claimed, and were allowed, the benefit of the appraisement law, and the property, failing to bring two-thirds of its appraised value, was withheld from sale for one year. In November, 1844, an alias *vend. ex.*, for which Carter had obtained an order of court, was issued upon his judgment, and the lands, being advertised, were sold by the sheriff, on the 1st day of the February term, 1845, of the Independence Circuit Court. At this sale, Carter became the purchaser, and, on the 7th day of February, 1845, obtained a sheriff's deed for the lands. On the 24th of the same month, he conveyed them to the complainant Patterson.

It is insisted, for the appellant, and it may be conceded, that his answer is a full and explicit denial of the allegations in the bill, to the effect that at the marshal's sale he colluded with Townsend Dickinson to aid him in defrauding his creditors, and among them the complainant, or that he purchased and held the lands in trust for Dickinson, with a private agreement that they might be redeemed, or sold for his benefit. To the extent that the answer is responsive, the answering defendant is entitled to the protection of the rule, that a decree cannot go against the answer, unless it is overturned by two witnesses, or one witness and strong corroborating circumstances. The complainant here prays that the defendant may be required to answer the allegations, and especially that he set forth and discover certain matters, about which he propounds a number of interrogatories. The allegations contained in the stating part of a bill, are the pleadings from which the complainant deduces his title to the relief sought It should set forth the facts essential to the relief, but need not detail all the evidence by which it may be expected those facts will be established. By the interrogating part of the bill, the

complainant proposes to make a witness of the defendant, and to elicit evidence from him in support of the allegations ; and when he propounds special interrogatories, may shape them in a variety of ways, of a minute and searching character, as he would examine an adverse witness, if they appear to be relevant, so that the answers to them might conduce to establish the complainant's case or repel some anticipated defence. If the defendant does not plead to the discovery, or except to the interrogatories for being frivolous or impertinent, it is his duty to answer them fully and satisfactorily. Failing to do so, he may be treated as if in contempt, and the complainant by excepting may compel a further answer. If he reply, it is a waiver of the exception, and the fact, specially enquired about, and not answered, stands neither admitted (unless peculiarly within the knowledge of the defendant) or denied ; to be proved by the complainant, one witness sufficing, like any other fact, where the defendant does not have the benefit of his denial or explanation under oath.

The prominent feature in the complainant's case, is, that the marshal's sale took place without any kind of notice contemplated by law to insure publicity. The rules promulgated by the federal court for this district, which were read and made part of the record at the hearing, adopt and conform to the State statute, as to the time and manner of advertising the notice of execution sales; and lands are required to be sold at the court-house door of the county in which they are situate. It is to be regretted that those rules do not go further, in conformity with the system and policy of the State law, by requiring that marshal's sales of real estate should take place on the first day of the Circuit Court of such county. As those courts are holden twice a year, and the judgment creditor in the Federal Court may sue out his execution, returnable to rule days, it is believed that this practice could be adopted in harmony with that prescribed for the State Courts, without any serious inconvenience. When it is considered that the levy of an execution on realty is an ideal act without notoriety or any visible change of possession; where the judgment

confers the lien, and the only means appointed by law to insure publicity and fairness in the sale, is by means of the advertisement of it, and the requirement that all such sales shall be held on the first day of each term of the Circuit Courts, usually the most public occasions in every county, drawing together a great concourse of people, and that by such sale the debtor is absolutely divested of his estate, the importance of complying with those requirements of law will be apparent. But in order to give confidence to purchasers at execution sales, so that property may bring the highest possible price, and which is, no doubt, the true interest of the debtor, the provision of law for advertising the sale, has been held to be directory, and the omission of it, or the failure of the sheriff to make a literal compliance with it, would not vitiate a sale to an innocent purchaser, who did not procure or participate in the irregularity; leaving the debtor, if injured, to his remedy against the officer thus negligent of his duty. In the case under consideration, the sale not taking place on any public occasion or time fixed by the State law, it is obvious that the only notice which could be given of the marshal's sale, was by means of the advertisement, and the sale as advertised having been postponed by a private agreement, and to take place without further notice upon a contingency known only to the plaintiffs and one of the defendants in the execution, there was really no observance of the usual means of publicity appointed by law. Now, so far as the defendant in the execution is concerned, it is clear that such a sale, taking place by his own consent and agreement, is valid, and he never can be heard to object to the title acquired by the purchaser, because any requirement of law had not been complied with, and which, being intended for his benefit, he had a right to waive. But other persons may be interested in having notice, actual or constructive, of the sale, at which every junior incumbrancer and creditor of the execution debtor has a right to be present, in order to bid upon the property, or see that it brings its full value. An execution sale, privately held by agreement of the debtor, at a time or place not appointed

by law, may not be void; but even where fraud is not alleged, the purchaser being ignorant of the want of notice, it would be reasonable to hold that it is voidable at the election of any junior incumbrancer or creditor, who had no notice, and who, in due season, offering to refund the purchase money, files a bill to have it set aside, the property resold, and the assets marshaled. It must be conceded there is a wide difference between holding the sale thus voidable, and absolutely void. If impeached and sought to be annulled and set aside for fraud, the knowledge of the purchaser of the want of advertisement, might not be conclusive against him. Because, in the absence of a provision by statute in this State, as we think would be desirable, whereby the property and assets of every debtor, in failing circumstances, may be more effectually secured to incumbrancers, according to priority, and apportioned among his general creditors, without being sacrificed in a scramble for undue preferences, a bill of that description, if sustained, would be attended with the same consequence of taking the property from one purchaser and vesting it in another, without any benefit to the general creditors, involving also a forfeiture, by the first purchaser, of the money he may have paid. But it is safe to say, that knowledge of such irregularity is always a circumstance, and, in connection with other attendant circumstances, may be a forcible one, from which collusion between the purchaser and the execution debtor is to be inferred.

In the years 1840, '41, and '42, the two Dickinsons were deeply indebted, beyond their means or ability to pay, and in 1841 and '42 there were various unsatisfied judgments against them in the Federal Court, and in the Independence Circuit Court, in addition to those before mentioned. In the month of March, 1841, T. & B. Dickinson, being largely indebted to the branch of the State Bank at Batesville, of which the defendant Ringgold was Cashier, made an arrangement, in which Townsend Dickinson was the principal actor, with the Bank, by which she obtained a deed of trust upon their plantation and negroes in Jefferson county, by making them a further advance of $5,000, a portion

28BB

of which was to be applied in discharging some previously existing liens upon that property; the whole to be repaid within a year. The result of which was, that the Dickinsons failing to make payment, the Jefferson property was sold under the deed of trust, bringing $2,000 over the debt to the Bank, of which excess one half was retained by the agent for his services, and the residue paid over to Townsend Dickinson. That property and the lands in Independence county, advertised by the marshal for sale on the 15th of the same month, embraced all the property of the Dickinsons, of which the witnesses deposing had any knowledge. At the sale which took place on the 1st of May, 1841, besides the marshal and clerk conducting it, and Townsend Dickinson, there were but few persons present; none who bid or appeared to take any interest in it, except the agent of the plaintiff's, the defendant Ringgold, and W. F. Denton. The two latter bid against the plaintiff's agent, but not against each other. They appeared to be acting in concert with Dickinson; that is to say, he frequently consulted with one or both of them, during the progress of the sale, and made representations in their presence and which were heard by others having no greater facilities for hearing, calculated to mislead the plaintiff's agent as to the situation of the lands, and location of the improvements, and the result was that one and the other purchased the two most valuable tracts, containing the houses and improvements, at comparatively low rates. On one occasion, when the agent was bidding sharply upon a tract of 278 acres, which he supposed was cleared land, Dickinson had the sale suspended, until he could step into the clerk's office and examine the records, and in a few minutes returned, reporting a mistake by some transposition of the tracts in the levy, so that the agent ceased bidding, and when the adjoining half section came to be offered, bought it at a higher rate, under the impression, from what Dickinson had said in a distinct and audible voice, that it embraced part of the farm, when in fact it was in the woods. It is proved that the lands in question lay within two or three miles of Batesville where Denton and the

defendant Ringgold had resided for many years previous. The purchases made by them averaged less than one-fifth of the real value of the lands, though this circumstance of itself is not important, since all the tracts, including those struck off to the plaintiff's agent, were sold at low rates; and it is part of the hardship of this whole transaction, so far as the general creditors of the Dickinsons are concerned, that the subsequent sale of the same lands to Carter, who doubtless bought at a hazard by reason of the clouds which had accumulated upon the title, was for a mere nominal sum.

There is no room for doubt respecting the acts and declarations of Townsend Dickinson. Previous to the marshal's sale, he proposed to one witness to sell him those lands, and suggested the plan of having them bought by a third person, under execution, so as to perfect the title to the witness, which was declined. On the day previous, the plaintiff's agent called upon him for information about the quality of the lands, location of the improvements, &c., and the answers were such as to deceive the agent. He requested the clerk of the court, in case the agent should call upon him for information about the lands, not to give him any satisfaction. On the day of sale, he stated to a witness, that the defendant, Ringgold, was to buy the lands for him, and allow him a certain time in which to redeem them; and, after the sale, he told another witness that such was his agreement with Ringgold. And what is singular, when these same lands were levied upon by Carter's execution, in 1843, we find the Dickinsons claiming the benefit of the appraisement law. But it is insisted for the appellant that he is not to be prejudiced by any declarations of Dickinson, to which he did not assent, until it is shown that there was a community of design between them, and that he was under no obligation to give, much less to volunteer, information to a rival bidder. We have left out of view every thing said by the witnesses about the impressions left upon their minds, as to what was the intention of the parties, their wish or design, when the acts or declarations, from which those impressions were derived, are

not stated. But two of the witnesses testify to their impressions of a fact. They are positive that Dickinson told them he was to have the privilege of redeeming, and they had the impression that Ringgold, at the time of the sale or shortly after, said the same. The impression, the belief, the recollection of a witness, about what was said, acted or omitted in any past transaction, are equally admissible as testimony, which is not always entitled to weight, because of the reckless or positive manner in which the assertion is made. Yet if that were the only feature in the case, we should hesitate to allow impressions, deposed to after a lapse of several years, and about which the witnesses admit their recollection is not clear or distinct, though of an affirmative fact, to outweigh a broad denial in the answer. So, in regard to the testimony of another witness, Wm. Lowe, who deposes to a conversation between Ringgold and the opposite party, shortly before the institution of this suit, in which he admitted that some limited time had been given to Dickinson to redeem; but, taking the whole together, the inference might be, that the privilege of redeeming was a gratuity, a matter subsequent to the sale, and not connected with any prior understanding.

In this balance of probabilities, two other facts, not before adverted to, remain to be considered. The appellant answers, that he does not know whether the marshal had given notice or not, of the sale, which took place on the 1st day of May, 1841, but he does not deny a knowledge of the agreement, entered into between Dickinson and the plaintiff's attorney, and the fact must be taken as established by the testimony, that the sale was not only without public notice, and made by virtue of the agreement, but that the marshal so proclaimed at the time, in the hearing of all present, including the appellant, who, if he did not know, had the means of knowing by what authority the sale took place. The other is, that the appellant, on the 28th day of December, 1841, accepted from Townsend Dickinson a conveyance of the same lands, which he had bought at marshal's sale, in May previous, for the consideration expressed of $1500. The explanation,

given of this, in the answer, is, that it was done to gratify Dickinson, and quiet his complaints about the low price at which the appellant had purchased the lands in question, and that he agreed to, and did settle and pay that amount of debts, upon which he was already bound as security for Dickinson, and expected to have to pay in any event, and without hope of reimbursement, so that the payment of this additional sum to Dickinson, in that mode, was a matter of indifference. Admitting this explanation, though the debts so paid are neither specified or satisfactorily proved, the acceptance of the deed was an unfortunate circumstance.

Waiving any enquiry, whether the special interrogatories are satisfied by the emphatic but literal denial of the allegations in the stating part of the bill, and giving to the appellant the full benefit of his answer as evidence, the conclusion of the Court, upon the whole case, is, that the decree appealed from ought to be affirmed. While it may be true, that the appellant was prompted by generous motives, and so unwillingly drawn into these transactions, there is no escaping from the conclusion, that he is chargeable with notice of the fraudulent designs of Dickinson.

The Court have not overlooked the claim, set up by the appellant to that portion of the lands in controversy, which had been sold by Robert Moore to Benjamin Dickinson, by reason of his having paid for Dickinson the greater part of the purchase money going to Moore. It does not appear that there is sufficient proof of this affirmative matter on the part of the appellant, upon which to found a partial decree in his favor. Affirmed.