## WOODRUFF vs. CORE.

The complainant being entitled to a pre-emption from having an improvement upon a quarter section of swamp land, filed his bill to set aside the legal title of a purchaser at public sale, but failed to show by other than weak and suspicious evidence, that the proof of his pre-emption right and the application to enter swamp land—the written proof and application not being produced—were for the land in controversy, whilst there was strong counteracting evidence to the contrary: Decree that his bill be dismissed.

The rule in *Conway vs. State Bank* held not to restrain this court from reviewing the decree of a court of chancery, brought here by appeal, which opens the whole case, as if it had never been tried, as to all the points made in the court below.

*Appeal from Pulaski Chancery Court.*

Hon. URIAH M. Rose, chancellor.

STILLWELL & WOODRUFF, for appellant.

JORDAN for appellee.

Mr. Justice FAIRCHILD delivered the opinion of the court.

Under the act of 16th January, 1855, the appellee, the plain-

tiff in the court below, was entitled to a pre-emption from having an improvement upon the west half of the north-west quarter of section eight, in township two south of range ten west, by declaring and proving his claim according to the provisions of the law. The 14th section of the act of 13th January, 1857, would also give the appellee a pre-emption right by making proof of his cultivation of the land under the previous law, for that act did not restrict the right to such persons as wished to pay for lands by levees, ditches or drains, but only gave to pre-emptors the privilege of paying in these works of reclamation. We say that the appellee was entitled to a pre-emption of the land in controversy, if he had proved it under the acts referred to, as we think that his improvement on, and cultivation of the land entitled him to the privilege of being a preferred purchaser. The only other point in the case is a question of fact, is whether the appellee took the steps, under the act of 16th January, 1855, to change his claim into a pre-emption right, so that it will overthrow the legal title of Woodruff, which is conceded to be perfect unless overshadowed by the appellee's prior equity.

On the 12th of March, 1859, the land agent at Little Rock. advertised that the land in controversy would be sold on the 23d of May, 1859, and it then became the duty of the appellee to secure the benefit of his pre-emption within those times, by making an entry of the lands in the state land office at Little Rock.

Robinson testifies that, about the 26th of March, 1859, he prepared a written declaration of the appellee of his right to a pre emption to a piece of land which he believes to be the one in controversy, but that belief is founded upon an inspection of a paper purporting to be a copy of the original, prepared by Robinson, and which we may suppose, from the argument for the appellee, to have been prepared by his attorney. Robinson swore to his statement, and also took and reduced to writing the supporting affidavits of Martin and Puckett, who identified the land and proved that the appellee had an improve-

ment thereon.   The deposition of Robinson states conclusively that a paper stating the appellee's right to a pre-emption was prepared by him; and was executed by the appellee, and was corroborated by Martin and Puckett, who, with the appellee verified their statements by oath, before Robinson, who was a justice of the peace, but it would be doing violence to the rules of evidence to say that the deposition shows that the paper related to the land in controversy.   Martin, however, does prove this, if his positive 'testimony to the fact be taken as proof, and he is equally explicit and positive in declaring that a few days after the paper was prepared, it was tendered as an application for entry of this land by the appellee to the land agent at his office, in Little Rock, that the money for the land was also tendered, that the entry was refused for the expressed reason that the land was not confirmed to the state as swamp land, that the appellee offered to leave his application on file in the office, and that the agent declined to receive it, or discouraged the appellee from so doing, because it was useless. Martin's testimony sustains every essential part of the case which it was necessary for the appellee as plaintiff to make, and if the case rested upon the testimony, and upon the answer of Woodruff, the latter would be overturned; for not being founded on matters within the personal knowledge of the respondent, it is only pleading in denial of the bill, and does not, like a responsive answer of facts known to the respondent, require more than one witness for its overthrow.

But Martin's deposition is met by opposing testimony.

What Owen, the land agent, states about not recollecting any application of the appellee, is not entitled to any consideration, both from the intrinsic nature of such evidence, as well as from what Owen says about his likelihood of not remembering the incident, if it had been a fact.   But the testimony of Owen is material in its account of the course of business in the office, and from Owen's positive testimony, from Weaver's statement of the condition of the plats when he was in the office in April and May, and from the examination made by the witness Wood-

ruff, it is well known that the piece of land in suit was marked as confirmed land on the plats when the appellee made his application for the entry. And Martin shows that neither Puckett nor himself had any trouble in entering their land, that the land agent made no objection to any entry, but that of the appellee's, and that solely for the reason stated. The forms of the applications or declarations and of the supporting affidavits were doubtless the same, as all were prepared at the same time by Robinson, and as the land in controversy was not unconfirmed land, but was distinctly marked as confirmed on the plats, Owen's refusal to allow its entry, if it had been mentioned in the appellee's application, cannot be explained on any reason that we are at liberty to assign. For we have no right, from any fact in this case, or from general principles, to assume that Owen would act fraudulently or oppressively towards the appellee. And upon the conjecture of mistake, there is at least as much room for suspicion that there might be a mistake in the appellee's specification of the land he wished to enter, as to attribute the mistake to Owen. Indeed we cannot conceive how there could have been a mistake in relation to this land being marked as confirmed land, and Owen was as likely to have seen its true condition from the marks upon the plats, when the appellee applied to enter it, as when Woodruff, the witness, called as often as he says in the interval between the advertisement and sale of the land, and was always told it had not been claimed by pre-emption; or as when Owen sold the land from the marks upon his plats. Though the deposition of Martin is unqualified as to the writing prepared by Robinson, and used by the appellee at the land office, embracing the land in controversy, yet it is in general terms, and he does not show that he testifies from a knowledge of what was in the paper. He knew on what piece of land the appellee's improvement and cultivation were, he knew that was the land intended to be put into the declaration, and he might then state, especially in the manner that terms are often prepared for a witness, that the writing related to the land in controversy, and express his

real belief, when the fact might be otherwise. On this point we think the probabilities are in favor of the correctness of Owen's conduct as set forth by Martin, connected with the marks of the land on the plats, rather than in favor of the writing prepared by Robinson, being as the appellee wished it to be, and as Martin thought and deposed it was. The paper would have proved itself in this particular, and the uncertainty that grows out of the inconsistency of the testimony of Martin and of Owen, is owing to the negligence or misfortune of the appellee in losing the paper; he thence ought to be the one to abide the loss that such uncertainty may produce. But a stronger fact is disclosed by Owen and Weaver as appertaining to the mode of business of the office, which is, that in all cases upon the refusal of an application to enter land it was Owen's invariable custom to endorse upon the application the reason of the refusal, and to file it in the office. This is so reasonable and according to the course of business, as well as consonant to Owen's habit, that it must have great effect in detracting from the weight of Martin's testimony. As a question of preponderance of evidence, it seems plain to us that it does not incline to the prosecution, that the scales do fall towards the defence.

We are not inclined to place much reliance upon the discrepancy between the different versions of Martin's statements, when he procured Fletcher to bid on the land at the sale at which Woodruff bought it, as Martin might have qualified his own account, or suggested some modification of Fletcher's statement, that would have been acceptable to him, had the two been face to face when either testified. Yet, Fletcher's testimony is not incompetent, because Martin was not first interrogated respecting it. For Martin's statement contained in itself all the elements of what it is necessary to apprise a witness when upon cross-examination, he must be referred to the time, place and person, connected with the contradictory statements that are to be introduced to impeach his testimony. And what Martin said upon this subject was not as a narative of a transaction, affecting the parties to the suit, but of an act of his

own, which might be disproved or modified by Fletcher, or by any witness having knowlede of the act. Looking upon the case of the appellee through the most favorable medium, we cannot regard it better for him than a balanced case, and that is not enough to entitle him to a decree without regard to the effect of a decree for him being to divest a legal title that has been fairly acquired, and under the sanction of a public legal sale. If the testimony of the appellee were not suspicious, it is too weak to uphold the decree, and being both weak and opposed to other stronger counteracting evidence, we cannot allow the decree of the Chancery Court to be enrolled as the decree which in our judgment, ought to be the final one between the parties upon this controversy.

Notwithstanding the infinitude of cases to which *The State Bank vs. Conway* is applied, we did not expect to have it cited to us as a restraint against reviewing the decree of a court of chancery, brought here by appeal, which opens the whole case as if it had never been tried, as to all the points made in the trial in the court below; yet we are willing to express our disinclination to reverse a decree upon a difference between us and the court that rendered it, that relates to the mere finding of facts. But it is a question of law whether the facts admitted to be before both courts, and to have been well considered by the Chancery Court, shall have the effect to establish a preemption or divest a legal title inconsistent therewith. We think the appellee failed to establish the equity he had before the sale of 23d May, 1859, to a pre-emption, and direct that the decree appealed from be reversed, and that a decree be entered here dismissing the bill of the appellee.