## LEACH *v.* SMITH.

### Opinion delivered October 8, 1917.

1. APPEAL AND ERROR—REVIEW OF JUDGMENT AT LAW.—In a case at law on appeal for review for errors, this court is not a trier of facts. It is for the judge and jury in the trial court to weigh the evidence, and a judgment will not be set aside on appeal where the result attained below is supported by any evidence legally sufficient to support the finding on the issues of fact.

2. APPEAL AND ERROR—CHANCERY APPEAL.—On appeal, chancery causes are tried *de novo,* and the findings of fact by the chancery court are allowed to stand unless they are clearly against the preponderance of the evidence.

Appeal from Pulaski Chancery Court; *J. E. Martineau,* Chancellor; affirmed.

*Carmichael, Brooks & Rector,* for appellant.

1. The evidence is not sufficient to overcome the written contract, or that it was abrogated and a new one made. The findings of the chancellor are clearly against the proponderance of the evidence. 105 Ark. 233; 98 *Id.* 459; 102 *Id.* 658, 663; 102 *Id.* 382; 92 *Id.* 359; 104 *Id.* 488; 84 *Id.* 349; 83 *Id.* 340.

2. The finding and decree are against the preponderance of the competent evidence. 78 Ark. 209; 97 *Id.* 135; 95 *Id.* 6. Leaving out the incompetent evidence admitted, there was no evidence to support the findings.

*James B. Gray,* for appellees.

1. This court will not disturb the chancellor's findings on questions of fact where not clearly against the preponderance of the evidence. Only a question of fact is involved here. Here the findings are all clearly sustained by the evidence.

WOOD, J.   In January, 1916, Charley Smith entered into the following written contract with Marion Leach, towit:

"Wampoo, Ark., January 4, 1916.

"On or before November 15, 1916, I promise to pay to M. L. Leach 12 bales of cotton, each weighing 500 pounds each, for rent on 77 acres of land, all west of Plum Bayou."

Appellant instituted this suit against Smith and J. B. Duncan, setting up the contract above set forth, and alleging that Smith had disposed of or was about to dispose of the crop on which the appellant had a landlord's lien for the unpaid rent for the year 1916.  He alleged that eight bales of cotton grown on the land were in the possession of J. B. Duncan.  He prayed for an injunction against the appellees to restrain them from disposing of the cotton or appropriating it to their own use.

The appellee, Charley Smith, admitted the contract set up in the complaint, but alleged that after the execution of this contract he was unable to secure supplies to make the crop; that thereafter he informed Leach that he could not get a merchant to furnish him under such contract, and that by mutual agreement on or before February 1, 1916, the written contract was abrogated and a new contract entered into whereby Smith agreed to pay Leach the sum of $8.00 per acre for such land as he worked in corn and one-fourth of the cotton and cotton seed grown on the land planted in cotton as rent for the land.

Duncan answered, setting up that he knew nothing of the alleged written contract set up in the complaint, and alleged that on February 17, 1916, Charley Smith made arrangements with him for supplies for the year 1916, and told him that his contract with Leach was to pay $8.00 per acre for all the land planted in corn and one-fourth of the cotton and cotton seed grown upon the land; that upon such representation Charley Smith executed a mortgage to Duncan & Company conveying his entire interest in the crop to be raised, and alleging that

he claimed an interest in the cotton in controversy under such mortgage. Both the appellees alleged in their answers that they were ready and willing to comply with the terms of the alleged verbal agreement between Smith, the tenant, and Leach, the landlord.

The appellant relied upon the written contract, the execution of which the appellees did not deny. But the appellees contend that the written contract of lease was abrogated by a verbal contract. The issue is purely one of fact, and it could serve no useful purpose, and would unnecessarily lengthen the opinion to set out and discuss the facts in detail.

The testimony on behalf of the appellees tended to show that Smith, for the year 1916, was the tenant of Marion Leach, having rented his land under the following circumstances: He first entered into the written contract of lease set up by the appellant. After entering into this contract he interviewed the mercantile firm of Morris & High, with whom he had been trading, and with whom he already had an account of $115.00, to see if they would furnish him supplies during the year 1916, and exhibited his contract of lease with appellant. The merchants refused and requested him to pay them the balance due. Smith informed the appellant that he could not get any merchant to supply him, in view of his written contract with appellant to pay the first twelve bales of cotton as rent. He gave appellant this information some time between the 1st and 5th of February. Appellant thereupon agreed to let appellee, Smith, hold the land for one-fourth of the cotton produced thereon for the year 1916 and $8.00 per acre for the land that was planted to corn, and told Smith to so inform J. B. Duncan & Company. He did so, and thereupon Duncan & Company agreed to furnish him supplies, and he executed to Duncan & Company a mortgage on his crop, which recites as follows: "80 acres crop rented from Marion Leach land, one-fourth cotton rent, $8.00 per acre for corn land."

Appellee Smith himself testified to the above facts concerning the verbal contract, and he was corroborated by four witnesses who testified that they heard a conversation between appellant and Smith in the early part of February, 1916, in which appellant agreed to rent Smith the land on which the cotton in controversy was grown according to the terms as testified to by Smith. Duncan corroborated Smith as to the conversation that took place between them when the mortgage to J. B. Duncan & Company was executed. And witness, High, of the mercantile firm of Morris & High, with whom Smith traded during the year 1915, also corroborated the testimony of Smith to the effect that they would not furnish him in view of the written contract he had entered into with appellant to pay the first twelve bales of cotton for rent.

The appellant, in his own behalf, testified, denying that he entered into the verbal contract, denying that there was any other contract than the written contract, and stating that this contract was never in any manner abrogated; and his testimony is corroborated by several witnesses who testified that they heard Smith say on different occasions during the year 1916 that he had agreed to pay Leach twelve bales of cotton and money rent for the land. Other witnesses testified that they heard Smith say that he would turn over the twelve bales of cotton to Leach, but that Duncan would not let him.

All the testimony was taken *ore tenus* before the chancellor and was properly authenticated and has been brought into the record.

The chancery court found that the contract attached to the complaint, dated January 4, 1916, "was subsequently abrogated by the parties and a new contract entered into whereby, as shown by the testimony, the defendant, Charles Smith, was to pay $8.00 per acre for the land he worked in corn and one-fourth of all cotton and cotton seed as rent for the land worked in cotton."

Counsel for the appellee contends, in effect, that since the chancellor heard the testimony *ore tenus* and thus

had an opportunity to see and hear the witnesses, the same weight should be given to his findings of fact as is given in trials at law to the findings of fact by a jury or the trial court sitting as a jury. But this contention grows out of a failure to observe the distinction, under our judicial system, between the rules of procedure in this court in cases at law and cases in chancery.

On appeal in law cases this court does not try the issues of fact anew at all, but only reviews for errors of law. The court only looks to the facts to determine whether the law is correctly applied, and only reviews the evidence when it is insisted that it is not sufficient to sustain a verdict; then it becomes a question of law to determine whether there is any evidence legally sufficient to sustain the verdict, and the court looks to the evidence for that purpose only.

(1) In law cases the jury, in the first instance, are triers of fact, and the trial judge, on a motion for a new trial, may review the evidence to determine whether the verdict is against the preponderance thereof. This court, on appeal, in law cases, leaves the jury and the presiding judge to weigh the evidence and decide as to its preponderance. This is peculiarly their function, and we do not set aside the results thus attained where there is any evidence at all of a substantial character; that is, legally sufficient, to sustain the finding on the issues of fact. In other words, in law cases this court, on appeal for review for errors is not a trier of facts.

But in chancery causes the procedure is entirely different. When chancery causes reach this court on appeal they are taken up for trial *de novo* on the record made up in the lower court, that is, on the same record, but the law and the facts are examined the same as if there had been no decision at *nisi prius*. In determining the issues of fact by this court in chancery causes, no weight is given to the findings of fact by the trial court unless the evidence is so conflicting as to leave the minds of this court in doubt as to where the preponderance lies. Where the evidence is evenly poised, or so nearly

so that we are unable to determine in whose favor the preponderance lies, then the findings of fact by the chancellor are persuasive. But the issues of fact, as well as law, are tried by this court anew.

(2)   The rule was early announced and has been consistently adhered to that the findings of the chancellor will not be set aside by this court unless they are clearly against the preponderance of the evidence. This simply means that on a trial anew of the issues of fact in a chancery cause on the record as presented to this court on appeal, unless it is clear to our minds, that is, unless we are fully convinced as to which of the parties litigant is entitled to the decision, we accept and adopt the findings of the chancellor as our own and treat them as conclusive. The meaning of the rule may be shown by this simple illustration: When chancery causes are taken up for determination by this court, the judicial balance, so to speak, stands at perfect equipoise. One side of the scales is labeled ''appellant,'' the other ''appellee.'' The testimony in the record is examined and all that is incompetent is discarded. That which remains for appellant is put on his side, and that for the appellee on his side, and if the scales are evenly balanced, or so nearly so as to leave the judges in doubt as to where lies the greater weight, then the decision of the court below is persuasive and is allowed to stand as the correct result.

While the rule has been stated in different form and in somewhat different language in various decisions of this court, the above we believe correctly states and illustrates the rule that chancery causes are tried *de novo* in this court and that the findings of fact by the chancery court are allowed to stand unless they are clearly against the preponderance of the evidence. *State Bank* v. *Conway,* 13 Ark. 350; *Ringgold* v. *Patterson,* 15 Ark. 209; *Woodruff* v. *Core,* 23 Ark. 341; *Gerson* v. *Pool,* 31 Ark. 85; *Chapman* v. *Liggett,* 41 Ark. 292; *Gist* v. *Barrow,* 42 Ark. 521, and other cases collated in 1 Crawford's Dig. of Ark. Reports, p. 75; *Brown* v. *Wyandotte, etc.,*

*Ry. Co.,* 68 Ark. 134; *Mooney* v. *Tyler,* 68 Ark. 314; *Norman* v. *Pugh,* 75 Ark. 52; *Goerke* v. *Rodgers,* 75 Ark. 72, and other cases cited in III Crawford's Dig. Ark. Reports, p. 36; *Carr* v. *Fair,* 92 Ark. 359; *Wait* v. *Stanton,* 104 Ark. 9, and other cases cited in IV Crawford's Dig. Ark. Reps., pp. 75-76. See also West's Consolidated Index Ark. Cases, Sec. 1009, App. and Error; 2 Standard Enc. Procedure, pp. 434-435. But seemingly contra, see *Branch* v. *Mitchell,* 24 Ark. 431.

In the case at bar the evidence is conflicting and so evenly poised that we are in doubt as to who is entitled to the preponderance, and we are not convinced that the findings of the chancellor are clearly against the weight of the evidence. We therefore adopt the findings of the chancery court as correct, and affirm the decree.