MALOY *v.* MALOY.

Opinion delivered April 20, 1925.

APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDINGS.— Where the Supreme Court finds that it is wholly unable to determine where the preponderance of the evidence lies, it treats the findings of the chancellor as persuasive and adopts such findings as its own.

Appeal from Stone Chancery Court; *Lyman F. Reeder,* Chancellor; affirmed.

*J. Paul Ward*, for appellant.

*Ben F. Williamson* and *Ben B. Williamson*, for appellee.

WOOD, J. This is an action by the appellant against the appellee in the Stone Chancery Court. The appellant alleged that he and the appellee were the sole owners of certain tracts of land in Stone County, amounting in all to 283.61 acres, which are described in the complaint. The appellant alleged that he owned an undivided three-fourths and the appellee an undivided one-fourth; that it would be to the interest of the parties to have the lands partitioned, and prayed that this be done by a division in kind, but, if this could not be done, the lands be sold and the proceeds divided between them in proportion to their respective interests.

In his answer the appellee admitted the allegations as to the ownership and that it would be to the best interest of the parties to have the lands divided, and that they were susceptible of subdivision. Appellee, by way of cross-complaint, alleged that there was due him the sum of $900 for improvements on and care of the farm for five years.

The court entered an order for a partition of the lands according to the respective interests of the parties, and appointed commissioners to make the partition. The commissioners made their report to the court, setting up a description of the lands as divided between the parties respectively. They allotted to the appellant 211.61 acres and to the appellee 72 acres. A plat containing a description of the respective allotments was filed as a part of the report of the commissioners. Exceptions were filed by the appellant to the report of the commissioners, setting forth, first, that the lands were divided in quantity without taking into consideration the quality of the lands; second, that the lands allotted to appellant were in seven fields, on which there were four water-gaps, and that the lands were washed and worn, whereas appellee's lands were in one fertile field with fewer water-gaps; third, that none of the uplands

susceptible of cultivation were given to appellant, while fifteen acres of such lands were given to the appellee; fourth, that the lands allotted to the appellant were fenced with "old rotten rails," while that allotted to the appellee was fenced with woven wire with barbed wire at the top, which was comparatively new; fifth, that appellant was entitled to lands of three-fourths the total value and appellee to one-fourth, but the commissioners gave the appellant only two-thirds of the total value and the appellee one-third. The appellant further alleged in his exceptions that the lands were not susceptible of division giving to each one his proportionate part, taking quantity and quality into consideration. The appellant prayed that the report of the commissioners be set aside and that the lands be sold and the proceeds divided.

The appellee responded to the petition setting forth appellant's exceptions, and denied all the allegations thereof. Appellee set up that appellant was not living on the lands, and that appellant wanted to have the lands sold in a body because he realized they would bring a better price if so sold. Appellee alleged that he made his home on the lands, with his four little orphan children, and that, if the lands were sold from under him, he could not take the money realized from his share of the proceeds and purchase another place of the same kind. He alleged that the division made by the commissioners was fair and equitable, and prayed that their report be in all things confirmed.

The appellant and the appellee are brothers. The lands in controversy originally belonged to the ancestral estate of their deceased father. Each of the parties joined in the original application for a partition, stating that the land was susceptible of division in kind, but, when the report of the commissioners was made, the appellant filed his exceptions thereto, and stated that the land was not susceptible of division in kind, and prayed that the same be sold and the proceeds divided in proportion to their respective interests. Each of the brothers testified to facts tending to sustain their contentions, as shown

in the exceptions to the report of the commissioners and the response to the exceptions. The appellant testified to the effect that the commissioners gave the appellee twenty acres in cultivation off of the west end of the farm, which was about one-fourth of the lands in cultivation, and that these twenty acres were much better land than the tillable land allotted to the appellant; that the lands set apart to appellant are washed in ditches, which is not the case with the lands allotted to the appellee; that, while there were three houses on the land allotted to the appellant, they were all not worth more than the sum of $300; that there were only about nineteen or twenty acres of timber lands worth anything for cultivation, and that of this the commissioners allotted to the appellee fifteen acres, and four or five acres to appellant, whereas the allotment should have been just the reverse; that, during the year 1922, appellee raised on the lands allotted to him 342 bushels of corn and the appellant raised on the lands allotted to him 482 bushels; that the appellee gathered 3½ bales of cotton and appellant 5½ bales.

Several witnesses testified to the effect that they had known the land for many years—some of them for more than fifty years; that the lands allotted to the appellee on the west end of the farm were far more valuable than the lands on the east end. One of these witnesses stated that there were only twenty-three acres of fertile land allotted to appellant and seventeen acres of good land allotted to appellee; that twenty acres of the land allotted to the appellant were so poor that they were almost worthless, and that the house, the main building, allotted to appellant was not worth more than $175; that of the uplands three acres were allotted to appellant and fifteen acres to appellee, suitable for cultivation; that appellant got less than two-thirds, whereas he should have had three-fourths of the total value. One of the witnesses stated that he would just as soon have the land allotted to the appellee as all of the land allotted to the appellant. One witness stated that the buildings were worth $250. These witnesses stated that they did not

believe the lands could be equitably divided; that the lands allotted to the appellee adjoined his homestead, which was to the detriment of appellant, resulting in 25 or 30 acres of good land to appellant and 18 or 20 acres to appellee, and about thirty acres of poor land to appellant.

Appellee and his witnesses testified to the effect that the one main building on the place allotted to appellant was worth about $1,000; that the lands adjoining the homestead of the appellee were allotted to him, and, unless it had been so allotted, his homestead would have been of little value. Other witnesses for the appellee testified to the effect that the allotment was fair. They corroborated the testimony of the appellee to the effect that the main house allotted to appellant was worth $1,000; that the other two houses on the farm were worth $300. Another witness testified for the appellee to the effect that all the buildings were worth the sum of $1,100. The effect of the testimony of the witnesses for the appellee was that appellant got all the improvements and a fair division of the land in cultivation and in the woods.

The appellee testified in detail concerning the value of the lands and the buildings, and stated that the main building on the land allotted to appellant, including the barn, orchard and garden, were worth $1,000; that, if the commissioners had not given to the appellant the improvements on the land in question, the value of appellant's land would have been lessened by reason of losing the improvement.

The above is a summary of the salient features of the testimony developed at the hearing. After hearing the testimony, the court approved the report of the commissioners and entered a decree approving and confirming same, from which decree is this appeal.

After a careful consideration of the testimony, we are convinced that the findings and decree of the trial court are not clearly against the preponderance of the evidence. It is most difficult, in cases of this kind, where there is a decided conflict in the testimony, to determine

where the preponderance lies, and, where this court finds that it is wholly unable to determine where the preponderance lies, it treats the findings of the trial court as persuasive, and adopts such findings as its own. See *Leach v. Smith,* 130 Ark. 465-470, and cases there cited.

The decree is therefore correct, and it must be affirmed. · It is so ordered.