WARD *v.* McILROY.

Opinion delivered January 24, 1927.

1. EVIDENCE—PAROL EVIDENCE TO EXPLAIN WRITING.—In a suit to enforce a written contract for the purchase of land, where the contract does not describe the land intended to be conveyed, parol evidence is admissible to show what land was intended to be sold.

2. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—On appeal in chancery cases, the Supreme Court tries the issues *de novo,* and the chancellor's findings are treated as persuasive,

and will be reversed only when they are clearly against the preponderance of the evidence.

Appeal from Washington Chancery Court; *Lee Seamster,* Chancellor; affirmed.

*Pryor, Miles & Pryor,* for appellant.

*Walker & Walker,* for appellee.

MEHAFFY, J.   This suit was begun in the Washington Chancery Court, the plaintiff, J. N. Ward, stating that, on the 25th of February, he entered into an agreement for the purchase of lot 11, block 6, in the town of Fayetteville, Arkansas, and attached to the complaint is a copy of the agreement relied upon by plaintiff.   The complaint further states that the agreement has been confirmed and approved by defendants, but that they have refused to convey lot 11, in block 6, and that said lot was the property of the Arkansas Cold Storage & Ice Company at Fayetteville, and that, under the terms of said agreement, plaintiff is entitled to said lot.   That the defendants are trustees for the Arkansas Cold Storage & Ice Company, and have conveyed all the property of said company except this lot, and that the plaintiff is entitled to have a decree of specific performance directing defendants to convey to him said lot 11, block 6, in Fayetteville, Arkansas.   The defendants answer, admitting that they entered into a written agreement, but deny that they sold to the plaintiff lot 11, block 6, in the city of Fayetteville, and deny that the lot was owned by the defendants or the Arkansas Cold Storage & Ice Company at the time they made the sale.   The answer further states that they sold and placed plaintiff in possession of all the real estate sold by them to the plaintiff, and that they did not sell or contract to sell lot 11.   The agreement referred to, and which was attached to the complaint, is as follows:

"Mr. J. H. McIlroy, Trustee,

"Arkansas Cold Storage and Ice Co.

"Fayetteville, Ark.

"Dear sir:   Confirming my proposition relative to buying the property of the Arkansas Cold Storage & Ice Company at Fayetteville and Springdale, Arkansas,

we will buy the same and pay you eighty thousand dollars ($80,000) for the two properties, on approval of abstracts of the real estate and you making me a deed to J. N. Ward, trustee, you paying all bills of indebtedness and giving me a clear title to same, with the exception of grooving and tubing the cans, which contract is $600, which I will pay. Me retaining all old salvage on all machinery and pumps taken out of the Fayetteville plant, and I will allow you the option of buying twenty-five per cent., or $20,000 worth of the interest in the two properties sold, on the same basis of value that you sell same to me. This option good for 15 days.

"I will assume the payrolls account for the erection account for the workmen and labor on the Fayetteville plant from February 23, 1925, excepting the payroll of your regular employees and night engineer, which you will pay. We will allow you the use of the rooms in which your apples are stored at Fayetteville and Springdale plants until April 1, 1925, you furnishing your fuel and paying your crew to operate the refrigerating machines to take care of the apples, we to take charge and complete plant at Fayetteville, beginning Monday, February 23, 1925, at our own expense. You to assign and transfer to me your contract with the Southwest Power Company, dated December 17, 1924, which I will assume and agree to carry out.

"I understand that the Springdale property, consisting of plant and equipment and the size of the lot, to be that part now occupied by the main building and 60 feet additional on the south side from the brick wall of said building, said 60 feet being of equal width across said lot, from east to west. In case there are any lawsuits pending affecting the title to said property, I agree that you may have the privilege of prosecuting said suits and perfecting the title of said real estate in whatever way is necessary to make good title, provided that you will give me a personal guarantee of yourself and F. P. Hall that you will hold me harmless by reason of any such liens or defect of title, until same are released or title perfected.

"This contract and agreement consists of two pages, executed in duplicate this February 25, 1925.

                              "J. N. Ward.

"We hereby acknowledge receipt of $1,000 paid by J. N. Ward on the above contract, which we have accepted and signed, on behalf of the Arkansas Cold Storage & Ice Company, this 25th day of February, 1925.

                         "J. H. McIlroy, Trustee.

"Approved, F. P. Hall, Trustee."

The testimony in this case shows that, after a survey was made and the controversy arose with reference to lot 11, the parties went ahead with the transaction and entered into an agreement and bill of sale to close the trade and to litigate the question as to the title to lot 11. The agreement and bill of sale is as follows:

"Whereas, the proposition of J. N. Ward to J. H. McIlroy, trustee, under date of February 25, 1925, relative to buying property of Arkansas Cold Storage & Ice Company at Fayetteville and Springdale, Arkansas, was accepted by J. H. McIlroy, trustee, and approved by F. P. Hall, trustee, and $1,000 was paid on said proposition.

"And whereas, by a warranty deed, the trustees under the agreement and declaration of trust dated May 15, 1922, and recorded in volume 207, at page 478 of the deed records of Washington County, Arkansas, have conveyed to J. N. Ward, trustee, lots 7 and 10, in block 6, in Fayetteville, Arkansas, and a part of lot 1 in block 7, in Fayetteville, Arkansas, more particularly described in said deed; also parts of lots 1 and 6 in block 1 of Holcomb's Addition to the town of Springdale, particularly described in said deed.

"And whereas it is the contention of the said J. N. Ward that he is entitled to have conveyed to him lot 11 in block 6 in the town of Fayetteville under the terms of said proposition made by him and accepted by the said McIlroy and Hall, trustee:

"It is agreed between the said J. N. Ward and J. H. McIlroy, William J. Hamilton, F. P. Hall, W. H.

McIlroy, Luke Powell and C. G. Dodson, trustees, that the said J. N. Ward may accept said warranty deed and pay the purchase price of the said property without waiving in any way his right to litigate his claim to said lot 11 under the terms of said proposition of February 25, and the said trustees hereby ratify and approve the acceptance of the said McIlroy and Hall of said proposition of February 25, 1925, and hereby agree that, by payment of the purchase price, said J. N. Ward shall not waive any of his rights to insist upon a conveyance from the trustees aforesaid of said lot 11, and said trustees shall not waive any of their rights under said contract of February 25, 1925, by acceptance of the payment, except that they shall not insist upon a repayment of the amount.

"And we, J. H. McIlroy, W. H. McIlroy, W. T. Hamilton, F. P. Hall, Luke Powell and C. G. Dodson, trustees, doing business under the name of Arkansas Cold Storage & Ice Company, by virtue of an agreement and declaration of trust, dated May 15, 1922, hereby transfer, assign and sell to the said J. N. Ward, for and in consideration of the sum of one dollar and other good and valuable consideration, the personal property of every kind and character belonging to us as trustees or to the Arkansas Cold Storage & Ice Company, located on the real estate conveyed by the said warranty deed, and also all personal property which was contracted for by us prior to February 23, 1925, and which has since been delivered and placed on said real estate so conveyed.

"And it is agreed between parties hereto that in all things said proposition of J. N. Ward, as accepted by J. H. McIlroy and F. P. Hall, is confirmed and made a part of this contract, a copy of which proposition and acceptance is hereto attached and marked Exhibit A.

"It is further agreed that, in the event the said J. H. Ward shall bring a suit on said contract of February 25, 1925, for lot 11, we will enter our appearance to said suit, and that said suit may be tried on the merits as to whether or not, under said contract, he was entitled to

said lot, without any claim or waiver on his part by paying the purchase price of said property, or any waiver on part of trustees by accepting it.

"In testimony whereof we have hereunto set our hands this 28th day of March, 1925.

> "J. H. McIlroy,
> "W. H. McIlroy,
> "F. P. Hall,
> "Wm. J. Hamilton,
> "C. G. Dodson,
>> "Parties of the first part.
> "J. N. Ward,
>> "Party of the second part."

The only controversy in this case is as to whether appellees conveyed lot No. 11. The testimony on the part of the appellees tends to show that, before any action looking to the sale of the property was made by appellees to appellant, appellees had sold lot 11 in block 6 to Sanford. They not only testified to this, but testified that this fact was stated to J. N. Ward, appellant, when he was on the deal for the property. Witnesses for appellant deny this. The testimony is in hopeless conflict, and it would serve no useful purpose to set it out at length.

The appellant's first contention is that the contract between the parties was in writing, and that parol evidence is inadmissible to vary or contradict the terms of the written contract. But does the oral testimony in this case vary or contradict the terms of the written contract? The contract says: "Confirming my proposition relative to buying the property of the Arkansas Cold Storage & Ice Company at Fayetteville and Springdale," etc. It would certainly require oral testimony to show what property the seller had, and oral testimony as to this does not vary the terms of the contract.

This court has recently said: "Parol evidence to vary the terms of a written contract is one thing, such evidence to enable the court to say what the parties to the contract intended to express by the language adopted in making it is quite another thing. The former is not per-

missible. The latter is permissible, and is often abso-
lutely essential to show the real nature of the agreement.
Both rules are elementary, and do not conflict in the
slightest degree with each other. One prevents a writ-
ten contract from being varied by parol evidence, either
in regard to what was said at the time it was made or
prior thereto; the other aids in determining what the
contract is when its language, either in its literal sense
or as applied to the facts, is obscure. The one rule is to
preserve the contract as expressed in writing; the other
is a rule of construction to determine what the contract,
as expressed, is, it being kept in mind that the mutual
intention of the parties, so far as the same can be ascer-
tained, governs within the reasonable meaning of the
language they chose to express it, and that rules of con-
struction to discover it are not resorted to unless there
is some ambiguity to be cleared up. A failure to keep
in mind the wide distinction between varying a contract
by parol evidence and resorting to such evidence in aid
of its construction, often leads to error.'' *Brown &
Hackney* v. *Daubs,* 139 Ark. 53, 213 S. W. 4.

If the appellant went to Fayetteville and looked at
the property, and it was pointed out to him, and he was
told that lot 11 had already been either conveyed or con-
tracted and he knew that this was not included in the
property which appellees were offering to sell, then cer-
tain parol evidence would be admissible to show the par-
ticular property pointed out to him, and, when he made
his proposition in writing for the purchase of the prop-
erty of appellees, it would necessarily mean the property
pointed out to him and the property both parties had
in mind. We therefore think the court did not err in per-
mitting oral proof to enable the court to say what the
parties to the contract intended to express by the
language used.

Appellant's next contention is that the finding of
the chancellor is clearly against the preponderance of the
evidence. On appeal in chancery cases this court tries
the issues *de novo,* and the findings of the chancellor are

always treated as persuasive, and his findings will be reversed only when this court can be convinced that they are clearly against the preponderance of the evidence. *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160; *Langston* v. *Hughes,* 170 Ark. 272, 280 S. W. 374.

This court has also said in determining the issues of fact by this court in chancery causes: "No weight is given to the findings of fact by the trial court unless the evidence is so conflicting as to leave the minds of this court in doubt as to where the preponderance lies. Where the evidence is evenly poised, or so nearly so that we are unable to determine in whose favor the preponderance lies, then the findings of fact by the chancellor are persuasive. * * * The rule was early announced, and has been consistently adhered to, that the findings of the chancellor will not be set aside by this court unless they are clearly against the preponderance of the evidence." *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160.

The testimony in this case was conflicting, and, after a careful consideration of the same, we are unable to say that the findings of the chancellor are clearly against the preponderance of the evidence. The judgment is therefore affirmed.

Mr. Justice HUMPHREYS did not participate in this case.