GRAYSON *v.* BOWIE.

4-5268                                        122 S. W. 2d 536

Opinion delivered November 28, 1938.

*Gaughan, Sifford, Godwin & Gaughan,* for appellant.
*Glover & Glover,* for appellee.

McHANEY, J.   Appellee, Willie Bowie, is a son of Monroe Bowie, deceased, who died testate and said appellee is a beneficiary under his father's will.   The other appellees are Willie Bowie's wife and his sister, Lena E. Goodwin, who brought this action for her brother as next friend, alleging that her brother was mentally incompetent.   All the appellees are colored.

On February 24, 1934, Willie Bowie and wife conveyed by deed to appellant all his remaining interest in the estate of his father, which came to him as legatee under said will, for a consideration of $750 cash.   The complaint alleged that said sum was grossly inadequate and that the reasonable value thereof was greatly in excess thereof; that Willie Bowie is upward of sixty years of age and wholly incapable of transacting business on account of his mental condition; that appellant persuaded him to part with his property, was an ex-

perienced business man, took advantage of him and perpetrated a fraud on him; and that said deed should be declared to be a mortgage. The answer was a general denial. Trial resulted in a decree for appellees, in accordance with the prayer of the complaint, which rendered judgment for appellant for the $750 paid, less the sum received by him in the distribution of the funds of the estate, from which is this appeal.

We think the court erred in so holding. Shortly after the execution and delivery of the deed to appellant, an attempt was made in the Ouachita probate court to have Willie Bowie adjudged insane and incapable of transacting business with the view of forming the basis for the present action, but the probate court, after hearing the testimony of Willie Bowie's neighbors, and upon the court's own personal knowledge, dismissed the petition, holding him to be sane and capable of transacting business. There was no appeal from said decision and appellant insists that appellees are bound thereby and cannot, in this proceeding, insist to the contrary. Whether this be true or not, we do not now decide, as we are of the opinion that the great preponderance of the evidence is contrary to the finding and decree of the court that Willie Bowie is incompetent. Twelve witnesses testified for appellees. Two of them were his sisters, one a sister-in-law, and one a nephew. Four others were colored friends. Three others were physician experts and the other the lawyer representing the estate of Monroe Bowie. The gist of all the testimony of the lay witnesses, relatives and others, was that, in 1924, Willie Bowie had or was supposed to have had an illness of some kind in Memphis, Tennessee, and that since said time, after he came back to Ouachita county, he has not been as active mentally as he was before; that since that time he has a poor memory; that the people around Camden generally regard him as not having a good mind; that his brothers had a power of attorney from and attended to his business for him, the power of attorney being executed during the time of his supposed unsound mind; and that he is not as careful about his personal appearance as he formerly was,

doesn't comb his hair, shave and clean up as he once did. Several of these lay witnesses, including the attorney for Georgie Morris, administratrix of the estate and sister of Willie, testified that in their opinion he was incompetent to transact his own business. This was corroborated by three medical experts. Other testimony was that he would walk off without telling anyone where he was going and wouldn't tell where he had been when he came back.

On the other hand, appellant produced fourteen witnesses including himself and three physician experts, all of whom testified that Willie Bowie is as capable and competent as he had ever been; that they had noticed no change in him and that they regarded him as sane and mentally competent. None of these witnesses were related to appellant and none had any motive to swear falsely unless it might be said that the cashier of the bank of which appellant is the president and his attorney who testified in his behalf might have had such a motive. In addition to the testimony of all these disinterested witnesses, there is the established fact that since said Willie Bowie came back from Memphis in 1924, he was put in the grocery business by his father and brothers which he conducted for some time; that he has been engaged in farming; that he brought a suit against his sister, Georgia Morris, to compel her to handle the affairs of the estate correctly and honestly, and compelled her to do so by a judgment of the probate court; that said sister settled with him a $1,000 liability for about $400, and she offered to buy the same interest from him for which appellant paid $750 for about $400. Evidently at that time she regarded him sane and competent. There are many other facts and circumstances in evidence tending to establish his sanity and competence, but one of the most potent is the judgment of the probate court, rendered subsequent to the conveyance, to the effect that he was sane and competent. When all these facts and circumstances are properly considered, we think the evidence preponderates in favor of appellant.

In *Bryant* v. *Edgmon,* 192 Ark. 20, 90 S. W. 2d 994, we restated the rule in this court in determining where the preponderance of the evidence lies in chancery cases by quoting the language of Judge Wood in *Leach* v. *Smith,* 130 Ark. 465, 197 S. W. 1160, as follows: "But in chancery causes the procedure is entirely different. When chancery causes reach this court on appeal, they are taken up for trial *de novo* on the record made up in the lower court, that is, on the same record, but the law and the facts are examined the same as if there had been no decision at *nisi prius.* In determining the issues of fact by this court in chancery causes, no weight is given to findings of fact by the trial court unless the evidence is so conflicting as to leave the minds of this court in doubt as to where the preponderance lies. Where the evidence is evenly poised, or so nearly so that we are unable to determine in whose favor the preponderance lies, then the findings of fact by the chancellor are persuasive. But the issues of fact, as well as law, are tried by this court anew."

Under this rule we hold that the decree of the court is against the preponderance of the evidence and must be reversed and the cause dismissed. It is so ordered.