## ROUW v. ARTS.

### Opinion delivered May 16, 1927.

1.  PARTNERSHIP—STATEMENT OF ACCOUNT.—A statement of a partnership account rendered by public accountants at the instance of one partner without the knowledge or consent of the other partner is not binding on the latter, unless it is otherwise established as correct by competent evidence.

2.  EVIDENCE—HEARSAY.—Testimony as to the correctness of a statement of a partnership account by a witness who made up the account from work sheets furnished him by others not testifying *held* hearsay and incompetent where the witness himself made no examination of the partnership books.

3.  APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— Where the evidence in a chancery case is so unsatisfactory and conflicting that it cannot be said as a matter of law that the decree is clearly against the preponderance of the evidence, the decree will be affirmed.

Appeal from Washington Chancery Court; *Hugh Dinsmore,* Special Chancellor; affirmed.

*Roy Gean,* for appellant.

· *John W. Nance,* for appellee.

McHANEY, J.   This is an action by appellant for an accounting of certain partnership transactions between himself and appellee, and involves various deals and enterprises in different localities, regarding the purchase and sale of fruit, melons and vegetables, beginning in the latter part of 1919 and running through the year 1920.   A disagreement arose between them in the latter part of 1920 or in 1921 as to the profits and losses on their transactions, and, not being able to settle their difficulties and wind up their partnership transactions, appellant brought this action in the Washington Chancery Court for an accounting, claiming that appellee was indebted to him in a large sum of money, for which he prayed judgment, or for whatever amount the accounting might disclose to be due him, in which he asked for the appointment of a master to state the account.   Appellee answered, denying any indebtedness to appellant, and claimed that appellant was very largely indebted to him. He made his answer a cross-complaint, and joined in the prayer for an accounting, and for judgment against appellant on his cross-complaint for the amount shown to be due him by such an accounting.   Thereafter the court appointed a master to take evidence and state an account between them, and to report his actions to the court for its action thereon. The master proceeded to the discharge of his duties, took a great mass of testimony, running through a number of volumes of record, and resigned.   The parties then agreed that J. W. Grabiel be appointed as master to succeed him, as master in succession, and the court made an order appointing him to state the account between the parties.   The master made a detailed finding under separate paragraphs, relating to the different deals, designating them by the names given the different deals by the parties, and found that appellant was indebted to appellee for different transactions handled by him in the sum of $10,713.42, and that

appellee was indebted to appellant for different trans-
actions handled by him in the sum of $3,970.44, the dif-
ference between these items being $6,742.98, which is the
amount the master found to be due appellee by appellant
in settlement of their partnership differences.   Both par-
ties filed exceptions to the master's report, and, upon a
hearing before the court, the master was permitted to
amend his report in one particular, which did not change
the result.   The court thereupon entered a decree for
the amount found to be due appellee by the master, and
from this decree comes this appeal.

Appellant bases his action very largely, if not almost
entirely, upon an audit made by Gilbertson & Company,
Oklahoma certified public accountants.   This audit was
made at the instance of appellant, and without the knowl-
edge or consent of appellee, and the result of this audit
would therefore not be binding on him unless it is other-
wise established to be correct by competent proof.   Mr.
Gilbertson testified that the detailed check of the books
was made by James Cumberford, assisted by D. A.
Augustus, and that Mr. Cumberford, the last time he
knew about him, lived in Chicago, and that Mr. Augustus
is dead; that his report as auditor was made up from the
work sheets furnished him by these gentlemen, and that
he bases his belief in the correctness of the account on
his-confidence in the work of Cumberford and Augustus.
Appellant's testimony therefore with reference to the
correctness of the audit and as to what the books showed
is entirely hearsay, as Gilbertson made no examination
of the records himself, and could only testify as to what
the work sheets of Cumberford and Augustus reflected
after summarizing these work sheets, in the form of a
statement of the different accounts.   This rendered the
testimony and the different statements as reflected by
the audit incompetent and valueless in the hearing before
the master and the court.   To have made same competent
testimony, Cumberford and Augustus should have testi-
fied to the correctness of the work sheets.   In the case of

*Johnson* v. *Berg,* 147 Ark. 323, 227 S. W. 413, the first syllabus reads as follows:

"Testimony by the owner of a set of abstract books as to the date of a certain deed as shown by the abstract books is hearsay where witness did not keep the books himself and could not testify that the entries therein were correct."

The other evidence in the record is quite unsatisfactory. We have examined same carefully, and are unable to say that the decree of the chancellor is against the clear preponderance of the evidence. In *Leach* v. *Smith,* 130 Ark. 465, on page 469, [197 S. W. 1160-1162], this court said:

"In law cases the jury, in the first instance, are triers of fact, and the trial judge, on a motion for a new trial, may review the evidence to determine whether the verdict is against the preponderance thereof. This court, on appeal, in law cases leaves the jury and the presiding judge to weigh the evidence and decide as to its preponderance. This is peculiarly their function, and we do not set aside the results thus attained where there is any evidence at all of a substantial character, that is, legally sufficient to sustain the finding on the issues of fact. In other words, in law cases this court, on appeal for review for errors, is not a trier of facts. But in chancery causes the procedure is entirely different. When chancery causes reach this court on appeal, they are taken up for trial *de novo* on the record made up in the lower court, that is, on the same record, but the law and the facts are examined the same as if there had been no decision at *nisi prius.* In determining the issues of fact by this court in chancery causes, no weight is given to the findings of fact by the trial court, unless the evidence is so conflicting as to leave the minds of this court in doubt as to where the preponderance lies. Where the evidence is evenly poised, or so nearly so that we are unable to determine in whose favor the preponderance lies, then the findings of fact by the chancellor

are persuasive. But the issues of fact, as well as law, are tried by this court anew.

"The rule was early announced, and has been consistently adhered to, that the findings of the chancellor will not be set aside by this court unless they are clearly against the preponderance of the evidence. This simply means that, on a trial anew of the issues of fact in a chancery cause on the record as presented to this court on appeal, unless it is clear to our minds, that is, unless we are fully convinced as to which of the parties litigant is entitled to the decision, we accept and adopt the findings of the chancellor as our own, and treat them as conclusive. The meaning of the rule may be shown by this simple illustration: When chancery causes are taken up for determination by this court, the judicial balance, so to speak, stands at perfect equipoise. One side of the scales is labeled 'appellant,' the other 'appellee.' The testimony in the record is examined, and all that is incompetent is discarded. That which remains for appellant is put on his side, and that for the appellee on his side, and if the scales are evenly balanced, or so nearly so as to leave the judges in doubt as to where lies the greater weight, then the decision of the court below is persuasive, and is allowed to stand as the correct result."

The evidence, as above stated, is so unsatisfactory and so conflicting that we cannot say as a matter of law, under the settled practice in this court, that the decree of the court is clearly against the preponderance of the evidence. For this reason the decree must be affirmed. It is so ordered.