WOOD, ADMINISTRATOR, v. CONNER.

4-7027                                        170 S. W. 2d 997

Opinion delivered March 29, 1943.

*W. J. Dungan,* for appellant.

*Fletcher Long* and *J. Ford Smith,* for appellee.

SMITH, J. This suit was brought against the administratrix of the estate of Roy K. Wood, deceased, under the authority conferred by § 171 of Pope's Digest which reads as follows: "When any testator or intestate shall have entered into any contract for the conveyance of lands and tenements which was not executed and performed during his life, and shall not have given power by will to carry the same into execution, the party wishing a specific performance of such contract may file his petition against the executor or administrator in the office of the clerk of the chancery court of the county in which the lands are situate, setting forth the facts on which he relies for such specific performance, and proceedings shall be had thereon as in other cases in chancery requiring the specific performance of contract."

The complaint also contained a prayer for general and appropriate relief.

The plaintiff, Conner, and the intestate, Wood, had many transactions extending over a long period of time, and a review of them would make this opinion of interminable length. We will, therefore, state only the salient and controlling facts. These are as follows:

On January 6, 1930, Conner was indebted to Wood in the sum of $331.50, evidenced by a note for that

amount, payable to the order of Wood, and, to secure its payment, Conner executed a deed of trust in Wood's favor upon four lots owned by Conner in the town of Augusta. The trustee advertised and sold this property under the power contained in the deed of trust on January 2, 1935, at which sale Wood became the purchaser for the recited consideration of $485.35, and, on the day of sale, the trustee executed his deed to Wood for the four lots so sold.

Conner was advised that the lots had been advertised for sale by the trustee, but he was unaware that there had been a sale, until long after that event had occurred. Conner, who is an illiterate negro, applied to one McKnight for assistance in preventing the sale, and McKnight testified that he went with Conner to see Wood and an agreement was reached whereby Wood should be given additional security and should take possession of the lots, collect the rents and apply the proceeds to the mortgage debt. The additional security consisted of a note given Conner by one Marshall for $600 payable at the rate of $25 per month for the purchase price of a lot sold Marshall by Conner. Marshall contends, and it appears to be correct, that he has paid this note.

Two witnesses testified that Wood kept a book referred to as "The Little Rents Book," in which notations were made by Wood of rents collected by him, and that witnesses had seen entries in this book of rents collected on the lots here in litigation.

In casting up the account between the parties, the court allowed Conner no credits for payments made by Marshall to Wood on account of this note. Yet there was offered in evidence numerous receipts in the name of the Augusta Mercantile Company for payments made by Marshall for the account of Conner to the mercantile company. Some of these receipts were signed by Sales, one of the bookkeepers for the mercantile company, while others were signed by Wood, who was the manager of the company. Just how much Wood received from payments made by Marshall does not clearly appear; but the record shows that on January 1, 1936, the mercantile company gave intestate, Wood, its check for $243.83,

which money was derived from payments made by Marshall.

There appears in the record a note executed by Conner to Wood, which we think is conclusive of the equity of this case. This note reads as follows:

"Augusta, Ark., Jany. 1st, 1935.

"$200.00

"On or before December 31st, 1936, after date, without grace, I promise to pay to the order of Roy K. Wood two hundred and No/100 dollars, for value received, negotiable and payable without defalcation or discount, at Augusta, Ark., with interest from date until paid, at ten per cent per annum, payable Annually, and if said interest is not paid within sixty days from the time same may become due, for any payment thereof, then the whole of said sum, with all interest due thereon, shall at once become due and payable; and in the event said interest is not paid annually, it is to be added to the principal and bear the same rate of interest.

"This instrument is accepted by Roy K. Wood, simply as an acknowledgment of balance due on a certain piece or pieces of property sold at Trustee's sale and is not to be considered as accepted as a part payment on balance due on this date.

"No..........................................

"Witness to signature /s/ L. E. Sales

"/s/ A. J. Conner"

This note was prepared by Wood and was probably erroneously dated January 1, 1935, instead of January 1, 1936. On the back of this note appears these notations among others:

"Amount of note........................$200.00
Interest to 1-1-37....................  20.00
                                      _____
                       $220.00"

If this note were correctly dated there would have been two years' interest due amounting to $40, and not $20, as noted. Here Wood wrote his own name as payee, and while he recited that the note was not to be accepted as a payment on the mortgage debt, it was a statement

of the balance then claimed to be due on the debt secured by the deed of trust, and this writing is evidence of a very high, if not of a conclusive, nature that Wood had agreed, notwithstanding the foreclosure of the deed of trust, of which Conner and McKnight were not advised, that Conner should have an extension of time in which to pay the mortgage or, if not, that Conner should have the right to redeem or repurchase the land. The evidence is clear that it was agreed that Conner should have an extension of time to pay the mortgage debt or should have the right to redeem or the right to repurchase, and that contract was made before the expiration of the time within which a redemption might have been effected from the trustee's sale, and the decree may be affirmed upon any of these grounds.

It is argued that the right to repurchase may not be enforced because if there were such an agreement it was not evidenced by any writing signed by Wood, the party sought to be charged, but we think it untrue that there was no writing signed by Wood evidencing the contract.

The note hereinabove copied contained the name of Roy Wood written by Wood himself. Of course, Wood did not sign the note as maker, for he was the payee, but he wrote his name as payee, and this note evidenced a contract under which Conner might at that time have paid $200 and have been entitled to a reconveyance of the lots, or the cancellation and satisfaction of the mortgage.

In Vol. II, Williston on Contracts, p. 1682, in discussing the necessity and effect of a signature to a contract, it is said: "It was early held that this did not mean a signature at the end of the writing, and there is no doubt that a signature may be put at any place in the writing, unless the local statute requires subscription."

The note to this text cites many cases and, among others, the case of *Kilday* v. *Schancupp*, 91 Conn. 29, 98 A. 335, Annotated in L. R. A. 1917A, 151, in which case it was held that: ". . . Where the defendant placed his own name in the body of the memorandum this was itself such authentication by him as to satisfy the statute of frauds."

In the Restatement of The Law of Contracts, Vol. I, § 215, it is said: "2. A and B enter into an oral contract by which A promises to sell and B promises to buy an automobile for $2,000. A writes a memorandum stating the terms of the contract beginning, 'I, A, make the following contract with B.' This is a signature by A within the meaning of the statute if from the delivery of the memorandum as complete, or from other circumstances, the court can infer that A's name was written with intent to authenticate the writing."

In the case of *Wilson* v. *Spry*, 145 Ark. 21, 223 S. W. 564, Justice Wood quoted from Wood on Statutes of Fraud, § 345, as follows: ". . . It is not necessary that the memorandum should be contemporaneous with the contract, but it is sufficient that it has been made at any time afterward, and then anything under the hand of the party sought to be charged, admitting that he had entered into the agreement, will be sufficient to satisfy the statute, which was only intended to protect parties from having parol agreements imposed upon them."

According to the testimony of McKnight, who was present when the agreement between Conner and Wood was made, whatever its exact terms may have been, the lots had been advertised for sale, but had not been sold. The lots were in the possession of Conner at the time the agreement was made and, as a result of the agreement, there was a delivery of possession to Wood who collected the rents until his death, after which time they were collected by the administratrix of his estate.

In the case of *Coates* v. *Dortch*, 145 Ark. 82, 224 S. W. 721, Chief Justice McCulloch said: "The fact that there was an oral agreement for the redemption on specified terms made within the time allowed for redemption and the payments made thereon, together with the fact that Dortch bound himself to pay the mortgage to the bank was sufficient to take the case out of the operation of the statute. This is not a case of an oral contract for sale of property to one already in possession, but it is a case where the original owner is in possession with the right to redeem and there is an oral extension of the period of redemption on specified terms, and we hold

that the acceptance of part of the redemption money pursuant to this agreement is sufficient to take the transaction out of the operation of the statute of frauds."

In the case of *Webb* v. *Vercoe,* 201 Cal. 754, 28 Pac. 1099, 54 A. L. R. 1207, there appears an extended annotation upon the question of: "Effect of oral agreement to enlarge time for redemption from payment under mortgage or other lien on real property," and a large number of cases are cited by the annotator to the effect that an oral agreement to permit redemption, or to extend the period for redemption after expiration of the statutory period for redemption, is not within the statute of frauds.

Among other cases cited by the annotator are our cases of *McNeil* v. *Gates,* 41 Ark. 264, and *Littell* v. *Jones,* 56 Ark. 139, 19 S. W. 497, with the comment that "the following additional cases recognize that such an agreement may not be within the Statute of Frauds, although on their facts it did not become necessary to consider the question."

Other cases are cited by the annotator to support the statement that "upon a somewhat different theory, the following cases hold a purchaser at an execution, tax, or foreclosure sale who has entered into an agreement to permit redemption or extend the time for redemption, and thereby cause the holder of the right of redemption to postpone the exercise of that right to a future period, cannot rely upon the Statute of Frauds to defeat the effect of his contract, since this would be permitting the statute, which was designed to prevent fraud, to be used as an instrument for its promotion."

These cases support the holding that the statute of frauds does not defeat Conner's right to the relief prayed. As the agreement made was that the lands would not be sold in consideration of the additional security and the agreement that Wood should collect and credit the rents on the mortgage debt, yet, notwithstanding this agreement, the mortgage was foreclosed, then and in that event a constructive trust arose. *Lewis* v. *Bush,* 171 Ark. 192, 283 S. W. 377; *Haskell* v. *Patterson,* 165 Ark. 65, 262 S. W. 1002; *Trevathan* v. *Taylor,* 177 Ark. 499, 6 S. W. 2d 835; Scott on Trusts, §§ 444-484. We conclude Conner

was entitled to the relief granted and that the right of redemption should be accorded him.

It is urged that the judgment of the Federal Court for the Eastern Division of the Eastern District of Arkansas adjudged and placed the title to lot 10, block 9, one of the lots included in the deed of trust, in Wood and is *res judicata* so far as that lot is concerned.

The basis of this contention is that a condemnation proceeding was brought against lot 10, block 9, and other lots owned by persons not interested in this appeal, for the purpose of erecting a post office building. Conner and his wife were made parties to that proceeding. The judgment of condemnation contains the finding that Wood was the owner of this lot 10, block 9. But Conner's attorney testified, without contradiction, that it had been agreed that the condemnation proceedings should proceed to a final judgment and that the money to be paid in its satisfaction should be deposited with the clerk of the chancery court to be held by him until this case, which was then pending, should be determined. There was no attempt in the condemnation proceeding to adjudge the title as between Wood and Conner and, in our opinion, that judgment did not have that effect, and the plea of *res judicata* is not well taken.

In the account, as stated by the court, Conner was given credit for the net proceeds of the condemnation suit and $85, rents collected, totaling $747. Conner was charged with the balance due on the mortgage indebtedness, with the interest due thereon and with other items. It is insisted that Conner should be charged with certain taxes not included in the account; and this contention appears to be correct. But these amount to much less than the collections made from Marshall, for which Conner was given no credit, but Conner has prosecuted no cross-appeal.

The net result of the decree is the finding that the Wood estate has been fully paid the balance required to redeem the lots and that Wood was overpaid to the extent of $486.01.

The court did not render judgment against the Wood estate for this excess, but did direct the administratrix

to execute a deed in that capacity, as provided and required by § 171, Pope's Digest, above quoted.

The testimony fully warrants this decree and it is, therefore, affirmed.