STANDRIDGE *v.* RICE.

4-8301                                    207 S. W. 2d 598

Opinion delivered January 19, 1948.

*C. H. Herndon, Jerry Witt* and *Rose, Dobyns, Meek & House,* for appellant.

*Boyd Tackett,* for appellee.

SMITH, J. On June 30, 1944, appellant Standridge entered into a contract with the Royal Lumber Company, a business partnership composed of and operated by Jeff Carpenter, Joe A. Rice and Roy A. Rice, whereby appellant agreed to sell to the Royal Lumber Company all pine and hardwood timber located upon an 1,100-acre tract of land, for an agreed price of so much per thousand feet. Several drafts of the contract of sale were prepared, all by C. E. Alexander, who was the company's bookkeeper, and who became its manager some time after the execution of the contract.

This suit was filed to cancel this contract on account of the alleged breach thereof, and pending its decision, the company was enjoined from cutting and removing the timber. The relief prayed was denied, the injunction was dissolved, and the company's time for cutting the timber was extended for the period of time covered by the injunction, and from that decree is this appeal.

The contract as prepared by Alexander, contained a clause reading as follows: "The said second party (lumber company) shall be given a period of not to exceed three years in which to cut and remove the said timber according to this contract". An advance payment of $100 was made, and its receipt acknowledged in the contract "as evidence of good faith on the part of the party of the second part, said advance payment to be applied on the stumpage cost of said timber during the performance of said contract." The contract was prepared in duplicate, a copy being given to each of the parties. Appellant carried his copy home with him for the purpose, as stated by him, of studying the contract, and the testimony concerning the circumstances attending its execution is sharply conflicting.

According to appellant he objected to the contract as prepared, which had already been signed by the lumber company, because it contained no stipulation as to the time when the cutting of the timber should begin, and the manner in which it should be pursued, and he refused to sign it until an *addenda* had been prepared reading as follows:

"The parties to the foregoing contract further agree that the cutting of this timber shall start with the first available machinery which can be had by the second party, and that said milling operations will continue without interruption, barring natural or unforeseen causes.

"This *addenda* or rider is hereby made a part of the foregoing contract by and between Arthur Standridge, party of the first part and the Royal Lumber Company, of Mt. Ida, Ark., party of the second part."

This *addenda* was written in duplicate and a copy thereof attached to each of the copies of the original contract.

Jeff Carpenter, one of the partners in the lumber company, and Roy A. Rice, another partner, testified that the *addenda* was attached to the contract the next day after it had been signed by both parties, and the court accepted this view of the testimony, and under that view held that the *addenda* was void for the reason that it constituted a material modification of the contract, and was void for the reason that it had not been signed as required by the statute of frauds, by the party here sought to be charged.

We take a different view of the testimony. It is undisputed that appellant objected to the contract as prepared, because it contained no provision as to the time when the cutting of the timber should begin, and it is undisputed also that it was agreed that the contract should be so modified as to provide a time for beginning cutting operations. The insistence is that the modification of the contract was not evidenced by the signature of the party here sought to be charged as required by the statute of frauds.

It is our opinion there was no modification of the contract, and that there was only one contract and that this writing referred to as an *addenda* was in fact a part of the original contract. Now it is true that this *addenda* was not attached to the contract until after it had been signed on behalf of the partnership, or party of the second part, but we find it also to be true that the *addenda* was agreed upon and attached to the contract before appellant signed it. The signature of the party of the second part would not make a complete contract. The signature of the other party was equally necessary, and there was no contract until both parties had signed, and as it was not signed by appellant until after the *addenda* had been attached as a part of the contract, we conclude that it became not a modification, but a part of the only contract between the parties.

As stated the testimony of Carpenter and Roy A. Rice supports the finding of the chancellor that the contract had been signed by both parties before the *addenda* was attached, but conflicting testimony and the probability of the case is to the contrary. It is undisputed that appellant Standridge was insistent that the contract be modified to stipulate when the cutting should begin, and it is also undisputed that this insistence was acceded to, and we think it highly improbable that Standridge signed or would have signed before the *addenda* was made, not as a modification, but as a part of the original contract. He is as positive as to the time when the *addenda* became a part of the contract as are Carpenter and Rice. We think the testimony of one Alexander, the bookkeeper for the lumber company, tips the scale on this issue of fact in Standridge's favor.

Alexander's testimony was as follows. He was the company's bookkeeper and in charge of its office. The parties had been negotiating for about a week prior to June 30, 1944, the date of the contract. Witness made two or three rough drafts before the contract was agreed upon. Standridge carried his copy home to study it. Having carried the contract home to study it, we think it improbable that he signed before studying it. The

witness further testified that Standridge returned the next day and insisted that a provision be inserted as to the time when the cutting should begin. But Mr. Rice, one of the partners, stated that this could not be done, as he did not know when machinery would be available to saw the timber, and the recital contained in the *addenda* was agreed upon. The witness was asked:

"And it was not signed by Standridge until you had placed that rider on the contract?"

He answered: "As I remember, that is right. Probably it had been signed by Jeff Carpenter as manager before that. I am not sure about that. As I remember, after this *addenda* was written then Mr. Standridge signed the contract."

On cross-examination the witness was asked:

"Now, I believe you say you do not remember exactly whether or not Mr. Standridge signed the instrument before or after this *addenda* had been placed upon the contract."

He answered: "I don't remember clearly, but I am inclined to believe it was after the *addenda,* because he kept hesitating about signing it until the agreement suited all parties. The contract as prepared suited the company and Mr. Carpenter may have already signed it, but Mr. Standridge did not sign it as I remember until the *addenda* was added."

He was further asked on his cross-examination: "Why was that *addenda* not written on the original contract rather than be attached, as it is, to this paper?"

He answered, "Because I didn't know just how much space it was going to take up and I didn't know whether I could get it on there or not. When descriptions are too long I sometimes write them on a separate piece of paper and paste it on."

He was further asked: "Would you be sure that Mr. Standridge had not previously signed this instrument, before the *addenda* was written and attached to the contract?"

He answered: "Yes, I am pretty sure he had not."

Asked why he felt sure, he answered: "Because that was one of the things that Mr. Standridge contended for, the last thing, that *addenda* there, that clause."

We conclude from this testimony that the *addenda* was attached before Standridge had signed, and that the contract became complete only upon his doing so. The statute which it is claimed prevents the *addenda* from being binding upon the lumber company reads as follows: 'No action shall be brought . . . to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them . . . unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized.'' Section 6059, Pope's Digest.

Inasmuch as the company did not again sign after the *addenda* had been prepared and attached to the original draft of the contract, it is insisted that the *addenda* is not enforceable against the company, the party here sought to be charged with the provisions of the *addenda,* because of the statute from which we have quoted. But it must be remembered that Alexander was the agent of the company and the statute permits signing by the party to be charged or by his authorized agent, and it was this agent who prepared and attached the *addenda.* Alexander prepared the *addenda* in the presence of two members of the lumber company who knew it had been prepared to meet Standridge's insistence. This *addenda* does not refer to the Royal Lumber Company by its partnership name, but it does refer to the party of the second part, and that party was the Royal Lumber Company.

These facts bring the case within the rule announced in the case of *Wood* v. *Conner,* 205 Ark. 582, 170 S. W. 2d 997, which case reviewed some of the authorities, one of our cases among the number, as to what constitutes "signing" by the party sought to be charged, within

the requirements of the statute of frauds. The instrument there in question was a note payable to the order of one Wood, who was the party sought to be charged in that case. In preparing the note Wood wrote his own name as the payee, but did not otherwise sign. It was there held that the name of Wood, the party sought to be charged, appearing in the note which he had prepared, was a sufficient signature to meet the requirements of the statute. We there quoted from the annotated case of *Kilday* v. *Schamcupp*, 91 Com. 29, 98 Atl. 335, L. R. A. 1917A, 151, the statement that "Where the defendant placed his own name in the body of the memorandum this was itself such authentication by him as to satisfy the statute of frauds." We there also quoted from our case of *Wilson* v. *Spry*, 145 Ark. 21, 223 S. W. 564, a statement from Wood on Statute of Fraud, § 345, reading as follows: "It is not necessary that the memorandum should be contemporaneous with the contract, but it is sufficient that it has been made at any time afterward, and then anything under the hand of the party sought to be charged, admitting that he had entered into the agreement, will be sufficient to satisfy the statute, which was only intended to protect parties from having parol agreements imposed upon them."

In the chapter on the Statute of Frauds, 49 Am. Jur. 698, § 393, it is said: "The physical attachment of one document to another may establish the connection of the papers for the purpose of affording a memorandum to satisfy the Statute of Frauds, especially where the one is referred to in the other as an attached paper."

It is admitted and undisputed that the *addenda* was attached to the contract in suit by pasting it, that this physical annexation was done by the agent and employee of the lumber company, and we hold that his action in so doing was the act of the lumber company, especially as it all took place in the immediate presence of members of that firm, with their knowledge and approval.

These views result in the conclusion that the *addenda* was a part of the contract between the parties, and that it required the lumber company to begin cutting the

timber with the first available machinery, and that these operations should continue without interruption barring natural or unforeseen causes.

Under the view of the court below that the *addenda* was not a part of the contract, the lumber company had three years within which to cut and remove this timber, and as only 23 months of that time had expired when the suit was filed, the relief was denied, and the court made no finding as to whether the lumber company had proceeded with the expedition required by the *addenda,* nor shall we, but we do reverse the decree, and remand the cause with directions to adjudge whether the lumber company had proceeded with the required expedition before being enjoined.

The contention that relief by way of cancellation should be denied in any event, for the reason that appellant had the adequate remedy at law of suing for damages for the breach of the contract, may be answered by saying that appellant testified that his chief reason for selling the timber was to devote the land on which it grew, and was standing to the pasture of his large herd of cattle, this being appellant's principal business, and it would be very difficult, if not impossible, to measure this damage.

The decree will, therefore, be reversed and the cause remanded with directions to adjudge the question of fact not passed upon.