RICE v. STANDRIDGE.

4-8778                                      218 S. W. 2d 88

Opinion delivered March 14, 1949.

*Boyd Tackett* and *Shaver, Stewart & Jones,* for appellant.

*Jerry Witt and Rose, Dobyns, Meek & House,* for appellee.

HOLT, J. This is the second appeal in this case, (*Standridge* v. *Rice,* 212 Ark. 703, 217 S. W. 2d 598.)

May, 1946, appellee, Standridge, brought an action to cancel a timber contract entered into with appellants in 1944. The contract provided: ''The second party (The Royal Lumber Company) shall be given a period of not to exceed three years in which to cut and remove said timber, according to this contract.''

An addenda was annexed to the contract which read as follows:

## "ADDENDA

"The parties to the foregoing contract further agreed that the cutting of this timber shall start with the first available machinery which can be had by the second party, and that said milling operations will continue without interruption barring natural or unforeseen causes.

"This addenda or rider is hereby made a part of the foregoing contract by and between Arthur Standridge, party of the first part, and the Royal Lumber Company, of Mt. Ida, Ark., party of the second part."

The cause was tried and much evidence was presented by the parties upon two issues,—whether the "addenda" constituted part of the contract, and in any event, whether the contract should be cancelled for non-performance.

January 25, 1947, the court entered a decree declaring, in effect, that the "addenda," even if it were added to the contract, by mutual consent, would not vary or modify the terms of the original contract, and further that it was void and unenforceable under the Statue of Frauds, and the complaint was dismissed for want of equity.

On appeal to this court, the decree was reversed on the ground that the addendum constituted a part of the original contract, was not a modification thereof and was not void under the Statute of Frauds. We there said: "These views result in the conclusion that the addenda was a part of the contract between the parties, and that it required the lumber company to begin cutting the timber with the first available machinery, and that these operations should continue without interruption barring natural or unforeseen causes.

"Under the view of the court below that the addenda was not a part of the contract, the lumber company had three years within which to cut and remove this timber,

and as only 23 months of that time had expired when the suit was filed, the relief was denied, and the court made no finding as to whether the lumber company had proceeded with the expedition required by the addenda, nor shall we, but we do reverse the decree, and remand the cause with directions to adjudge' whether the lumber company had proceeded with the required expedition before being enjoined.

"The contention that relief by way of cancellation should be denied in any event, for the reason that appellant had the adequate remedy at law of suing for damages for the breach of the contract, may be answered by saying that appellant testified that his chief reason for selling the timber was to devote the land on which it grew, and was standing to the pasture of his large herd of cattle, this being appellant's principal business, and it would be very difficult, if not impossible, to measure this damage.

"The decree will, therefore, be reversed and the cause remanded with directions to adjudge the question of fact not passed upon."

Upon remand, the cause was submitted to the trial court without additional testimony, but upon the mandate, "the record and proceedings previously had" and the court made the following findings:

"1. The sawmill equipment and machinery of Sanders Swindle was available to defendants commencing with the month of August, 1944, to cut plaintiff's timber in accordance with the contract in suit and the addenda thereto, and such machinery and equipment was again available for such purpose in January, 1945, in May, 1945, and in January, 1946, but the defendants wrongfully neglected and refused to avail themselves of any of said opportunities to so cut plaintiff's timber.

"2. The sawmill equipment and machinery of George Devasher was available to defendants from and after March 9, 1946, to cut plaintiff's timber in accordance with said contract in suit and addenda, but de-

fendants wrongfully neglected and refused to avail themselves of such opportunity.

"3. The defendants ordered a sawmill in July, 1944, suitable for the cutting of plaintiff's timber, and said mill arrived in Texarkana, Arkansas, ready for delivery to defendants in January, 1945. Although defendants had notice of such delivery they wrongfully refused to accept delivery. Had they not so refused, such mill would have been available to defendants to cut plaintiff's timber from and after January, 1945. In January, 1946, defendants had the opportunity of purchasing another sawmill suitable for the purpose of cutting plaintiff's timber, and which mill would have been delivered in April, 1946, but they wrongfully refused to avail themselves of such opportunity.

"4. Defendants did not exercise reasonable or any diligence in seeking to obtain available and suitable machinery in order to cut plaintiff's timber in accordance with the contract in suit and the addenda thereto.

"5. Defendants made no effort reasonable or otherwise to cut plaintiff's timber until after this suit was filed in May, 1946. Defendants repeatedly neglected opportunities commencing in August, 1944, to cut plaintiff's timber and wrongfully repeatedly utilized such opportunities in order to cut timber elsewhere.

"6. With the machinery which was available to defendants, or with the machinery which by the exercise of ordinary diligence would have been available to them, defendants could have cut plaintiff's timber described in the contract in suit within a period of seven and one-half months.

"7. By reason of their failure to cut plaintiff's said timber with the first available machinery subsequent to the execution of the contract in suit, defendants have breached said contract and plaintiff has been damaged thereby irreparably and in an amount incapable of accurate calculation; plaintiff is entitled to a rescission of said contract," and ordered and decreed the contract in question cancelled, that appellee, Standridge, pay into

the registry of the court for appellants, $100, the down payment of appellants on the purchase price of the timber described in the contract, and that appellants pay all costs, etc.

This appeal followed.

Appellants' contentions here are: (a) They "conducted their operations according to plan, recognized by custom and sanctioned by law as laid down by this Court, and appellee tacitly recognized their right so to operate. (b) The phrase used in the contract 'first available machinery' merely obligated appellants to employ the facilities which were on hand when the contract was executed in the cutting of appellee's timber when they should become 'available' in the course of carrying out the aforesaid plan of operation;" that they "went beyond their contractual obligations and made a reasonable effort to secure additional machinery and facilities, but without avail, though through no fault of their own. (c) Appellee, because of his failure to protect against the appellants' operation in accordance with plan his silence and acquiescence," estops him to claim a forfeiture under the contract.

Boiled down, the contentions of appellants were questions of fact and the ·decisive question here is whether they commenced to cut the timber with the first available machinery and proceeded "with the required expedition before being enjoined."

A large number of witnesses testified for the parties. Much of the testimony was conflicting. It would serve no useful purpose to detail and analyze this testimony. We have read it carefully and have reached the conclusion that the findings of the Chancellor, *supra,* are not against the preponderance of the evidence.

The decree, therefore, must be, and is affirmed.

GEORGE ROSE SMITH, J., not participating.