RICE *v.* MOUDY.

4-9260                                    233 S. W. 2d 378

Opinion delivered October 30, 1950.

*Hebert & Dobbs,* for appellant.

*Charles X. Williams, John Freeman, Witt & Witt* and *Donald Poe,* for appellee.

ED F. McFADDIN, Justice. This litigation stems from a timber contract between the parties.

In 1947 appellees agreed to purchase, and appellants agreed to sell, the pine and oak timber of specified size from eight tracts of land totaling 1,960 acres. The agreed price was to be $30 per thousand for pine timber, and $12 per thousand for oak timber; and the appellees were to cut and remove the timber from the tracts within a specified time. Appellees paid appellants $10,000 as part payment and were to render regular reports and calculations. Included in the contract was the timber on a tract of 1,160 acres, known as the "Standridge Tract," concerning which appellants were in litigation; and the con-

tract provided that if appellants lost such litigation, then the Standridge Tract would be deleted from the contract. The appellants lost such litigation [1] and, as a result, the appellees claimed the timber on the remaining tracts was not sufficient to equal the $10,000 initial payment and the other payments made; and appellees brought this action to recover $1,734.82 claimed to be due them. Appellants conceded that appellees would have been entitled to a refund if the timber on the remaining tracts had not equalled $10,000 and other payments; but appellants claimed that the timber exceeded the total payments by $2,339.29 for which amount appellants prayed judgment on their cross-complaint. [2] The cause was tried to a jury and resulted in a verdict and judgment in favor of appellees for $1,734.82; and appellants, in seeking a reversal, present the contentions now to be discussed.

I. *Admission of Evidence.* The trial court, over appellants' objections, allowed appellees' witness, Alexander, to introduce in evidence a statement of several pages which was an audit or recapitulation of appellees' records concerning the timber cut and removed. Appellants claim that this statement was inadmissible under the rule against hearsay evidence; [3] and they cite *Central Coal & Coke Company* v. *John Henry Shoe Company,* 69 Ark. 302, 63 S. W. 49; *Johnson* v. *Berg,* 147 Ark. 323, 227 S. W. 413; *Rouw* v. *Arts,* 174 Ark. 79, 294 S. W. 993.

We conclude, however, that the evidence introduced in the case at bar made the Alexander statement admissible on every point except as to which tract of timber furnished each load of logs. Here is such evidence: Oscar Graham testified that he made duplicate tickets just as he scaled each load of logs; that all of the tickets were written by him except one, and he furnished the

[1] See *Standridge* v. *Rice,* 212 Ark. 703, 207 S. W. 2d 598; and *Rice* v. *Standridge,* 214 Ark. 806, 218 S. W. 2d 88.

[2] There were one or two small items, involving a saw and a claimed shortage on some lumber, that were included in the figure named in the cross-complaint.

[3] "Evidence is hearsay when its probative force depends on the competency and credibility of some person other than the witness. Subject to certain exceptions, the courts will not receive testimony of a witness as to what some other person told him, as evidence of the existence of the fact asserted." 31 C. J. S. 919.

information for that one; and he gave one copy to the timber hauler, and filed the other copy with Herbert Watson, bookkeeper of appellee. These original tickets were introduced in evidence. So Alexander's testimony about the tickets was a recapitulation of what the tickets showed and was substantiated by the man who made them. Herbert Watson testified that he posted appellees' ledgers from the said original tickets; and the ledgers were exhibited at the trial. So Alexander's statements of what the ledger showed were not only supported by the man who had made the tickets but also by the man who had made the entries in the ledger.

Graham and Alexander each testified that Alexander was the auditor, or head bookkeeper; that when Alexander prepared the questioned statement, Graham assisted him; that the statement was prepared for appellants; and that one of the appellants personally checked the appellees' books and haul tickets. Testifying in the case were a timber cutter, timber hauler, the log scaler who made the tickets, and the bookkeeper, as well as Alexander, who prepared the statement introduced. In short, the person performing each stage of the procedure testified; and such testimony removes the statement from the inhibition of hearsay testimony, because the statement prepared by Alexander and introduced in evidence was a recapitulation of the combined testimony of the witnesses who testified from personal knowledge. This is true as to every part of the Alexander statement, except that part which attempted to show the particular tract from which each log came, and that point is further discussed in Part II, *infra*.

Furthermore, since the timber contract required the appellees to submit to appellants a statement of the timber received under the contract, this statement made by Alexander, under all of the circumstances heretofore mentioned, might have been a record made in the regular course of business, and admissible under the rules stated in *Alexander* v. *Williams-Echols Dry Goods Company*, 161 Ark. 363, 256 S. W. 55. And see, also, Act 293 of 1949 which is an Act to provide for the introduction

in evidence of records made in the regular course of business.

II. *Motion for an Instructed Verdict.* At the close of the plaintiffs' case in chief, the defendants' (appellants here) motion for an instructed verdict was refused and such ruling is assigned as error. In testing the correctness of the Court's ruling, we must consider all the evidence in the case. See *Grooms* v. *Neff Harness Company,* 79 Ark. 401, 96 S. W. 135; *Fort Smith Cotton Oil Company* v. *Swift & Company,* 197 Ark. 594, 124 S. W. 2d 1.

Appellants' main insistence on this point is that the contract required the logs to be scaled "at the mill site" of appellees, whereas, in fact, some of the logs were scaled at a railroad point. Appellants also insist that the contract required appellees to keep a record of the timber cut from each tract, and that appellees failed to comply with such provisions.

As to these matters, there was evidence (a) that Carpenter—one of the appellants—checked appellees' books and haul tickets each two weeks and raised no objection to the place at which the logs were scaled, or as to the failure, if any, to show from which tract the timber came; and (b) that statements of the logs so scaled were delivered to the appellants and received by them without objection. Such evidence was sufficient to take the case to the jury on the principal issue of whether, in fact, there was sufficient timber on appellants' lands to equal the advance deposit of $10,000 plus the other payments made. That was the bitterly contested feature of the case.[4] The jury might well have found that after the elimination of the Standridge Tract, the parties considered the point of delivery and the designation of tracts from which the timber came to be

---

[4] That such is true is indicated by a statement made by appellants' attorney, when—in objecting to appellees' interrogation of a witness as to each of the haul tickets—he said: "If the court please I don't want to interrupt this line of examination if the court thinks it is necessary, but there is no controversy between us as to the method they kept books. The controversy is whether they cut all the timber they should cut and whether they cut some they shouldn't cut. We don't dispute their method of keeping books."

so inconsequential as to ignore them in their dealings. On this basis the Alexander statement as to the designation of the tracts from which the logs came was immaterial. The motion for an instructed verdict was properly denied.

III. *Appellants' Instruction No. 3.* Appellants complain of the refusal of the Court to give this instruction which reads:

"You are instructed that it was the duty of the plaintiffs to have all tracts of lands included in the timber purchasing contract surveyed by metes and bounds and the boundaries plainly established in order to learn or ascertain the amount of merchantable timber they were obligated to cut and, if you believe from the evidence, that plaintiffs failed or neglected to so fix said boundaries then you will take that into consideration in determining whether plaintiffs properly accounted for all timber they were obligated to cut and in arriving at your verdict on their claim under their complaint and amendment thereto."

This instruction was intended to make applicable to this case the provisions of § 54-201, Ark. Stats.[5] (1947). But that section is clearly for the protection of owners of property adjacent to timber about to be cut, and certainly can be waived by parties as to their timber, even if applicable to such a situation. That such provision was waived by all parties in this case is shown by the evidence. Appellee, Leo Moudy, testified that appellant, Rice, told him that appellees would be relieved of having the land surveyed because appellant, Carpenter, was familiar with the tracts of timber and would show the

---

[5] This Section reads: "Before any person or persons, who shall desire to cut and remove for purpose of rafting, making railroad ties, piling, telegraph poles, staves, or sawing into lumber, any timber from any land in this State, he, or they, shall, unless the same has been surveyed and the boundaries thereof ascertained and known, before cutting and removing the same, procure the county surveyor of the county in which such land may be situated and cause such land to be surveyed by said surveyor, and the metes and bounds of such land shall be marked and plainly established. And this act shall apply as well to persons purchasing timber rights from lands of this state, as to land owners. (Act Mar. 6, 1885, No. 45, § 1, P. 50; C. &. M. Dig., § 7018; Pope's Dig., § 8998)."

cutters where to cut. Appellant, Carpenter, testified that he knew the lines of the different tracts and showed the cutters such lines. So certainly the conduct of the parties constituted a waiver of the Statute, even if applicable, which we do not decide. The trial court was, therefore, correct in refusing appellants' Instruction No. 3.

Finding no error, the judgment is affirmed.