GREEN *v.* GREEN.

5-1959                                    329 S. W. 2d 411

Opinion delivered November 16, 1959.

[Rehearing denied December 21, 1959]

*Paul K. Roberts,* for appellant.

*James A. Ross,* for appellee.

GEORGE ROSE SMITH, J.   The principal question in this case is whether the plaintiff-appellee Lula Bell Green is barred by limitations or laches from foreclosing a mortgage executed in 1929 by the appellee Morton Green, who is now Lula Bell's husband.   The chancellor held that the cause of action is not barred and accordingly entered a decree of foreclosure.   The appellants, defendants below, are the personal representative and heirs

of Addie Bell Green, a sister of Morton's, who held the record title to the mortgaged land at the time of her death in 1957.

This is the chronological sequence of events: In 1929 Morton Green, then unmarried, mortgaged forty acres to Trotter & Sons to secure a $300 note. Morton and Lula Bell were married a few months later. In 1930 Morton and Lula Bell executed a second mortgage to Morton's sister, Addie Bell Green, to secure a debt of $130. The second mortgage does not appear to have been paid, but it was long ago barred by limitations and is not a factor in the case.

From 1929 through 1942 Morton made two or three small payments upon the Trotter note in every year except one. On September 19, 1934, the Trotters endorsed on the margin of the record a notation that a payment of $48.40 had been made on November 16, 1933. The next marginal endorsement by the Trotters was made on May 17, 1939, and recited a payment of $4.89 on October 10, 1938.

On January 7, 1935, Addie Bell sent her brother a letter in which she said that the Trotters were about to foreclose and had told her that they would do so unless Morton deeded the land to Addie Bell, so that she could raise money to pay off the Trotters' mortgage. With this letter Addie Bell enclosed a quitclaim deed the Trotters had prepared. Five days later Morton and his wife signed the deed to Addie Bell, and the title remained in her name until she died in 1957. The appellants argue that Addie Bell's letter to her brother is rendered inadmissible by the dead man's statute, but the point was decided adversely to their contention in *Josephs* v. *Briant,* 115 Ark. 538, 172 S. W. 1002, Ann. Cas. 1916E, 741, as testimony that a letter was received does not involve a personal transaction with the decedent.

Addie Bell is not shown to have made any effort to refinance or discharge the debt to the Trotters. In 1943 Morton's wife Lula Bell paid the Trotters in full and took an assignment of the note and mortgage. There-

after Lula Bell kept the mortgage ostensibly alive by endorsing part payments on the margin of the record at about four year intervals. She and Morton both testified that Morton actually made the part payments, Lula Bell having been advised to follow that course to keep the mortgage in force. After Addie Bell's death in 1957 Lula Bell brought this suit for foreclosure. The decree in her favor is an *in rem* judgment against the land, no personal judgment against Addie Bell's estate having been asked.

In insisting that the debt is barred by the statute of limitations the appellants rely upon the fact that more than five years elapsed between the date of the payment that was made on November 16, 1933, and the date of the next marginal endorsement, May 17, 1939. A sufficient answer to this contention is that the Trotter mortgage was not apparently barred of record when Addie Bell received the quitclaim deed in 1935, and she was therefore not a third party within the statute that requires the endorsement of payments. Ark. Stats. 1947, § 51-1103; *Jimerson* v. *Reed,* 202 Ark. 490, 150 S. W. 2d 747. Since the mortgage was not then barred of record Addie Bell was not, under the holding in the *Jimerson* case, entitled to gain by the mortgagees' failure to endorse subsequent payments upon the margin of the record.

The appellants urge us to reject the appellees' testimony that Morton really made payments to his wife after she acquired the note and mortgage, but on this issue of credibility we defer to the decision of the chancellor, who had the advantage of seeing the witnesses as they testified. We conclude that the debt was not barred by limitations when the suit was filed, and there is no sound reason to charge Lula Bell with laches or with an estoppel. It does not appear that Addie Bell Green was prejudiced in any way by her sister-in-law's failure to enforce the mortgage promptly; to the contrary, Addie Bell profited by the delay, as she received income from the land for a number of years.

Finally, it is insisted that the court erred in allowing one of the Trotter partners to prove, by means of the firm's ledgers, the various payments that Morton Green made upon the debt. The cases cited by the appellants, *Johnson* v. *Murphy,* 204 Ark. 980, 166 S. W. 2d 9, and *Covington* v. *Covington,* 216 Ark. 549, 226 S. W. 2d 557, do not support their objections to Trotter's testimony, for in those cases the account books were offered without any competent testimony to establish their authenticity. Here the witness Trotter was not a party to the suit, so his testimony was not affected by the dead man's statute; and the book entries made in the regular course of business were admissible. *Rice* v. *Moudy,* 217 Ark. 816, 233 S. W. 2d 378; *Vickers* v. *Ripley,* 226 Ark. 802, 295 S. W. 2d 309.

Affirmed.