John Wallace NAIL *v.* STATE of Arkansas

CR 74-8                                    509 S.W. 2d 826

Opinion delivered May 20, 1974
[Rehearing denied June 24, 1974.]

*Kelley & Luffman,* by: *Eugene T. Kelley,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Richard Mattison,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. The jury found appellant John Wallace Nail guilty of assault with intent to kill and fixed his punishment at 12 years in the penitentiary. For reversal appellant contends among other things that the trial court erred in permitting State Trooper Ferguson to testify that he received on his police radio a bulletin that appellant and two companions Goodwin and Lyles had escaped from a jail in Muskogee, Oklahoma.

The record shows that Trooper Ferguson was patrolling Highway 72 north of Rogers and that because of some bulletins received he was on the lookout for a 1968 Dodge automobile having the right rear tail light missing and bearing Arkansas license Number CIM 123. When he identified the automobile he turned on his police lights signaling the car to stop. The Dodge automobile with its three occupants at first slowed down and then speeded up. When Trooper Ferguson gave chase, the occupants in the Dodge began shooting at him. At least one shot hit the radiator and one or more others hit the windshield of the Trooper's automobile. The chase lasted for several minutes during which time other

officers came to Trooper Ferguson's aid. The chase finally
ended near the Missouri border when the Dodge automobile
was wrecked. Trooper King at that time observed three per-
sons emerging from the wrecked automobile. Goodwin and
Lyles were captured shortly thereafter. Appellant was cap-
tured the next day while he was walking along a county road
near the Missouri border.

No witness was able to identify appellant as one of the
occupants of the automobile. To overcome this problem the
prosecution proved the bulletin contents relative to
appellant's escape from the Muskogee jail with Goodwin and
Lyles and the testimony of John Holm to the effect that he
was tied up in his home at Fayetteville, by Dale Goodwin,
Stanley Lyles and appellant. Mr. Holm testified that while he
did not see the man take his 1968 Dodge, the automobile was
missing when he got loose and that it was the same
automobile later towed to Gooch's Body Shop. Other
testimony tied the car at Gooch's Body Shop as being the
wrecked automobile from which the shots were fired.

To sustain the action of the trial court the State contends
that Trooper Ferguson's testimony established the basis for
his pursuit of the automobile in which appellant was fleeing
the police and that Trooper Ferguson's knowledge received
by radio was knowledge of the entire State Police Depart-
ment. It then contends that such knowledge was not hearsay.
In doing so the State relies upon *Jones* v. *State*, 246 Ark. 1057,
441 S.W. 2d 458 (1969) and *Johnson* v. *State*, 249 Ark. 208, 458
S.W. 2d 409 (1970).

In both *Jones* v. *State*, *supra*, and *Johnson* v. *State*, *supra*, the
lawfulness of the arrest became an issue because the State
wanted to introduce some evidence acquired without a search
warrant as being incidental to a lawful arrest. Here the law-
fulness of appellant's arrest was not an issue. Neither was the
trooper's original pursuit an issue because the shooting arose
after the pursuit started.

Evidence is considered hearsay when its probative force
depends on the competency and credibility of some person
other than the witness, *Rice* v. *Moudy*, 217 Ark. 816, 233 S.W.
2d 378 (1950). The probative force of the bulletin with
reference to appellant's escape from the Muskogee jail would

of course depend upon the competency and credibility of some person other than Trooper Ferguson or the knowledge of the Arkansas State Police Department. Consequently, we must conclude that it was hearsay. Having concluded that it was hearsay and not otherwise admissible to prove some other issue under an exception to the hearsay rule, it follows that the trial court committed prejudicial error in permitting such proof to be made.

Appellant raises a number of other issues such as the sufficiency of the evidence and the admissibility of a photograph which we do not reach as such matters are not likely to arise in the same form upon a new trial nor on the same evidence.

Reversed and remanded.

HARRIS, C.J., and JONES, J., dissent.

J. FRED JONES, Justice, dissenting. I do not agree with the majority opinion in this case. The plain facts are: Goodman, Lyles and the appellant Nail escaped from jail in Muskogee, Oklahoma, and in their flight from Oklahoma they robbed a grocery store, then entered the home of John Holm in Arkansas and after tieing him up, they took eight guns from his home and left in his 1968 Dodge automobile. When the state police officers attempted to stop them, they fired several rifle shots at the pursuing police officers, finally disabling one of the state police automobiles and finally wrecking the Dodge automobile. Goodman and Lyles were taken into custody immediately after fleeing on foot from the wrecked Dodge, but Nail eluded the officers and was not taken into custody until the following day.

Nail was not tried and convicted of escaping from the Muskogee jail, nor was he tried and convicted for stealing Mr. Holm's automobile. John Wallace Nail was tried and convicted for assault with intent to kill the police officers who were attempting to overtake and stop the Dodge automobile.

The sequence of events occurred in the following manner: Trooper Keith Ferguson of the Arkansas State Police was on routine patrol in northwest Arkansas when he received a radio bulletin informing him of a jailbreak in Muskogee, Oklahoma, and the escape of three prisoners from

the jail. The radio bulletin broadcast the physical descriptions of the three escapees and identified them by name as Stanley Lyles, Michael Goodman and John Wallace Nail. The bulletin then announced that three individuals thought to be the escapees had entered a home in Fayetteville, Arkansas, stealing a vehicle and some guns, and were still believed to be at large in northwest Arkansas. The stolen vehicle was described in the broadcast as a beige colored 1968 Dodge with one broken tail light on the righthand side and license No. CIM 123.

According to the testimony of Trooper Ferguson, he spotted a vehicle as described in the bulletin at approximately 8:50 p.m. while patrolling Highway 62. He pursued the vehicle and signaled for it to stop. The driver of the vehicle first slowed down as if intending to stop and then suddenly accelerated at a high rate of speed. A high speed chase ensued and one of the occupants leaned out the righthand side of the vehicle and began firing at Trooper Ferguson. He returned the fire and pursued the men until his vehicle became disabled from bullets through the radiator and windshield. During the chase Trooper Ferguson had radioed for assistance and Trooper King answered his call.

Trooper King testified he met the fleeing Dodge automobile near the Arkansas-Missouri line and immediately turned his unit around and gave chase. He testified there was one person in the back seat of the automobile who had short, dark colored hair and appeared to be holding a rifle. He also testified that at the conclusion of the chase he saw all three persons get out of the automobile and run from it. He said the two individuals who got out of the front seat had long hair, one blond and the other dark, and the one who alighted from the rear seat had short dark hair. Trooper King then testified that Trooper Ferguson and other officers arrived on the scene and he then described the search they made through a barn and some woods in search of the three former occupants of the automobile. He then described how they apprehended Lyles and Goodman in some woods immediately following their escape from the wrecked Dodge automobile and how they apprehended Nail the following day. Nail was cold and wet when apprehended about three miles from where the automobile was wrecked and his identity is not questioned.

Mr. John Holm identified Nail in open court as one of the three individuals who tied him up in a back bedroom of his home when his guns and Dodge automobile were taken.

There is no question that the jury verdict of guilty and the judgment thereon was supported by substantial evidence in this case. The record of Trooper Ferguson's testimony for which the majority say the judgment must be reversed appears as follows:

"A. Earlier in the day, I had received information over the radio—a state-wide bulletin to all State Police Units in the State of Arkansas, mostly to the people in the northwestern part of Arkansas—of a jailbreak—

MR. KELLEY: That's hearsay.

THE COURT: Overruled

A. of a jailbreak in Muskogee, Oklahoma, and that the subjects—three subjects—had escaped and were believed to be in this area.

Q. Did they give you a description of these people?

A. Yes, sir. They had a composite made up of the men's faces and names.

Q. Do you recall what these names were?

A. Yes, sir. One of them was a Goodwin [sic], a Nails [sic] and a Lyles, and they were supposedly headed in our general direction.

Q. So you had already been put on alert, then?

A. Yes, sir. Earlier in the day.

Q. Now, about this time, did you hear anything else on the radio concerning this matter?

A. Yes. The three subjects had supposedly entered a home in Fayetteville and had taken their car and left them—I think—supposed to have taken some guns, also.

Q. Did you get a description of this automobile that was taken in Fayetteville?

A. Yes, sir. They gave out a description of being a 1962 Dodge.

Q. Did they give any further description or official description of this car?

A. Yes, sir. It was a newer, near-white car —beige-colored car—1968 Dodge, and it had one tail-light out on the right-hand side. The license number on the car was CIM123, Arkansas '72 plates.

Q. All right. Did you ever see a car that night meeting this general description?

A. Yes, sir. Approximately 8:50 p.m. that night, I was still on this hill and was overhearing traffic from another trooper from the radio talking about a car fitting this description, and they were—a car came by me at approximately this time fitting the description.

Q. And that was at Brightwater Hill on 62?

A. Yes, sir.

Q. Back to that radio bulletin that you received just before that, did they — was this any description made of the people who had taken this particular car in Fayetteville?

A. Yes, sir. It was confirmed as the same people that had broken out of jail in Muskogee, Oklahoma.

Q. Goodwin, Lyles and Nails [sic]?

A. Yes, sir.

Q. All right. When you first saw the car, what did you do?

A. When I first saw the car, when it went by, I seen that it — that there was a tail-light out on the left-hand side, and I seen that it was a Dodge and I pulled out on the highway and went after it, and I caught up with the car at about Codlings Grocery, which is 62 and 72 Junction on 62.''

It is my view that the evidence pertaining to the Muskogee jailbreak was not offered or admitted for the purpose of showing or proving that the appellant had in fact broken out of the Muskogee, Oklahoma, jail and escaped; it is my opinion it was offered for the purpose of showing why the officer attempted to overtake and stop this particular automobile in the first place. It appears slightly ridiculous to me that Trooper Ferguson should be so restricted by a rule of evidence requiring him to begin his testimony in the middle of his pursuit of a beige colored Dodge automobile, which pursuit was being conducted for no apparent reason at all.

HARRIS, C.J., joins this dissent.